Docket No. 105415.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

CHRISTOPHER HOLLY, Plaintiff, v. JORGE MONTES, Chairman of the Prisoner Review Board for the Illinois Department of Corrections, Defendant.

*Opinion filed May 22, 2008.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke took no part in the decision.

## OPINION

The plaintiff, Christopher Holly, filed an original complaint for *mandamus* in this court under Supreme Court Rule 381 (188 Ill. 2d R. 381(c)). He sought an order directing the Prisoner Review Board (Board) to eliminate the condition of electronic home confinement (EHC) during his mandatory supervised release (MSR). Prior to oral argument on his complaint, however, Holly's EHC was terminated, and the electronic monitoring device was removed. The Board then moved to dismiss the complaint as moot. Nonetheless, we will address the issues raised in the complaint because they fall under the

public interest exception to the mootness doctrine. We also hold that the Board properly imposed EHC as one of Holly's MSR conditions, precluding a grant of *mandamus* relief. Therefore, we deny Holly's request for *mandamus*.

## BACKGROUND

In 2002, Holly entered a negotiated guilty plea to second degree murder and concealing a homicide for acts he committed in 1996. Prior to accepting the plea, the circuit court admonished Holly about the potential sentences, including the statutorily required term of MSR. Holly received consecutive prison sentences of 15 and 5 years, respectively, as well as a term of MSR. In 2007, the Board imposed EHC as a special condition of his MSR.

Subsequently, Holly filed a complaint for *mandamus* in this court, seeking an order directing the Board to enforce the terms of his plea bargain. According to Holly, EHC could not be included as a condition of his MSR because: (1) the Board had no statutory authority to impose EHC as an MSR condition; (2) EHC constituted unconstitutional imprisonment following the completion of his prison sentence; and (3) his due process rights were violated because EHC during his MSR was not part of the bargain he struck when he entered his negotiated plea.

The Board countered that its authority to impose EHC as a condition of MSR was necessarily included in the legislature's broad grant of discretion. Moreover, the legislature specifically authorized EHC as a condition of MSR. Finally, the Board claimed that Holly was not deprived of due process or the benefit of his negotiated plea when the circuit court failed to admonish him that EHC could be a condition of his MSR.

Only eight days before oral argument, Holly's parole agent removed his electronic monitoring bracelet and informed him that he was no longer subject to electronic home confinement. The Board then filed an emergency motion to dismiss Holly's *mandamus* action on mootness grounds. We declined to resolve the mootness issue at that time.

## ANALYSIS

### I. Mootness

Initially, we address the Board's mootness claim. In both its emergency motion and oral argument, the Board argued that we should not consider Holly's *mandamus* complaint because we could no longer grant him effective relief after his release from EHC, the sole relief requested in the complaint.

Holly maintains, however, that we should address the merits of his complaint because the Board continued to assert the legality of its conduct. In addition, he argues that the Board could reimpose EHC without warning or explanation, just as it had released him from EHC prior to oral argument, implicating both the recurrence and public interest exceptions to the mootness doctrine.

When intervening events preclude a reviewing court from granting effective relief to a complaining party, an appeal is rendered moot. *Felzak v. Hruby*, 226 Ill. 2d 382, 391 (2007). Under the recurrence exception, however, we may review moot controversies where there is a "reasonable expectation that the same complaining party would be subject to the same action again and the action challenged [would] be of such short duration that it [could not] be fully litigated prior to its cessation." *In re J.T.*, 221 Ill. 2d 338, 350 (2006). We decline to apply that exception in this case, however, because the Board's reimposition of EHC during Holly's remaining MSR term is purely speculative and does not create a "reasonable expectation" that he will be subjected to EHC again.

Nonetheless, this court has also reviewed moot controversies under the public interest exception. That exception applies where "(1) the question is of a substantial public nature; (2) there is a need for an authoritative decision to provide future guidance; and (3) the situation is likely to recur." *In re J.B.*, 204 Ill. 2d 382, 387 (2003). Unlike in the recurrence exception, the public interest exception considers potential recurrences to any entity, not only the complaining party. See *In re Andrea F.*, 208 Ill. 2d 148, 157 (2003). Thus, we examine the applicability of the public interest exception in this case.

By statute, every convicted felon in Illinois, except those serving natural life or death sentences, is required to serve a term of MSR. 730 ILCS 5/5–8–1(d) (West 2006). Consequently, a large group of

felons will be on MSR at least once, exposing each to the possibility that the Board will impose EHC. The vast number of felons potentially affected by the Board's allegedly improper imposition of EHC satisfies both the first and third prongs of the public interest exception test, requiring a question of a substantial public nature and a likeliness of recurrence.

In examining the second prong of the test, requiring future guidance from an authoritative decision, we note the substantial litigation addressing the imposition of EHC during MSR in both Illinois and federal courts. See *Hadley v. Montes*, No. 4–07–0506 (February 26, 2008); *Neville v. Walker*, 376 Ill. App. 3d 1115, 1119 (2007); *Martin v. Walker*, No. 04 C 6098 (N.D. Ill. December 1, 2004); *Taylor v. Remmers*, No. 01 C 5134 (N.D. Ill. April 12, 2002). The ongoing litigation on EHC warrants an authoritative determination on the validity of the Board's imposition of EHC as a condition of MSR. Having determined that this case falls within the public interest exception to the mootness doctrine, we turn next to the merits of Holly's request for *mandamus*.

## II. The Availability of EHC As a Condition of MSR

"*Mandamus* is an extraordinary remedy to enforce, as a matter of right, 'the performance of official duties by a public officer where no exercise of discretion on his part is involved.' [Citation.]" *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229 (1999). To obtain relief, a plaintiff must establish a clear right to *mandamus*. *Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 133 (1997). *Mandamus* is improper where " 'its effect is "to substitute the court's judgment or discretion for that of the body which is commanded to act." ' [Citation.]" *Lewis E.*, 186 Ill. 2d at 229. Consequently, we will not grant *mandamus* relief unless the plaintiff has clearly shown: (1) an affirmative right to relief; (2) defendant's duty to act; and (3) defendant's authority to comply with the order. *Noyola*, 179 Ill. 2d at 136 (Bilandic, J., dissenting).

### A. *The Board's Statutory Authority*

Holly primarily argues that *mandamus* is required because the Board had no statutory authority to impose EHC as a condition of his

MSR. In a related argument, he contends that the Board lacked the authority to impose EHC at the time of the offenses and that any reliance on the legislature's subsequent grant of authority violates the *ex post facto* clause of the Constitution (U.S. Const., art. I, §10). After construing the pertinent statutes, we disagree.

In construing statutes, our primary duty is to give effect to the intent of the legislature. *Collins v. Board of Trustees of Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110 (1993). The best indicator of legislative intent is the plain statutory language when given its ordinary meaning. *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 226 Ill. 2d 559, 567 (2007). We may not add exceptions, limitations, or conditions to statutes in derogation of their plain meaning. *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117 (2007).

At all relevant times, section 3–3–7(a) of the Unified Code of Corrections (Code) provided that the "conditions of parole or mandatory supervised release *shall* be such *as the Prisoner Review Board deems necessary* to assist the subject in leading a law-abiding life." (Emphases added.) 730 ILCS 5/3–3–7(a) (West 2006). We have held that the legislature's use of the word "shall" generally indicates a mandatory requirement. *Village of Winfield v. Illinois State Labor Relations Board*, 176 Ill. 2d 54, 64 (1997). Thus, section 3–3–7(a) grants the Board wide authority to establish any MSR conditions it deems necessary. This conclusion is further supported by section 3–3–1(a) of the Code, establishing the Board as "*the authority* for setting conditions of *** mandatory supervised release under Section 5–8–1(a)." (Emphasis added.) 730 ILCS 5/3–3–1(a)(5) (West 2006). See also 20 Ill. Adm. Code §1610.80 ("mandatory supervised release *** [is] subject to rules of conduct prescribed by the Board and *any special conditions deemed appropriate by the Board* in individual cases" (emphasis added)).

Applying the plain statutory language, the Code grants the Board wide discretion in the setting of MSR conditions, restricted only by constitutional constraints. In the absence of a constitutional violation, however, this discretion is sufficiently broad to include the imposition of EHC as a condition of MSR. Additionally, the quoted portion of section 3–3–7(a) was in effect both in 1996, when Holly committed offense, and in 2007, when the Board imposed EHC, contrary to

Holly's contention that the Board's reliance on authority granted only after he committed the offenses raised *ex post facto* concerns.

In addition, we note that the legislature's broad grant of blanket discretionary authority to the Board in setting MSR is not improper or unique. We have previously acknowledged the propriety of the legislature's similar, broad grant of authority to the Board to award or deny parole. In *Hanrahan v. Williams*, 174 Ill. 2d 268 (1996), we determined that the General Assembly granted the Board such "complete discretion" over whether or not to grant parole that judicial review of parole denials was improper. *Hanrahan*, 174 Ill. 2d at 276 ("We believe that Illinois' statutory criteria and the Board's rules do not provide standards for release on parole sufficiently objective to allow a court to evaluate the Board's decision to deny parole. We thus conclude that the legislature, in drafting the statutory language, intended the Board to have complete discretion in determining whether to grant parole when the denial of parole is not mandated by statute").

Holly counters that the legislature demonstrated its intention that EHC only be imposed on certain sex offenders by mandating its application for only those offenders in section 5–8–1(d)(5) (730 ILCS 5/5–8–1(d)(5) (West 2006)). Because he was not convicted of one of the listed offenses, he contends that EHC cannot be applied to him. We reject this argument. The mandatory imposition of EHC as a MSR condition for one specified class of offenders does not logically mean that the same condition may not also apply to another class of offenders. Indeed, section 3–3–7(b) (730 ILCS 5/3–3–7(b) (West 2006)) permits the Board to impose "other conditions" in a term of MSR in addition to those specifically listed in that section. That flexibility in the establishment of MSR conditions comports with the legislature's broad grant of authority to the Board in setting conditions "such as the [Board] deems necessary to assist the subject in leading a law-abiding life" (730 ILCS 5/3–3–7(a) (West 2006)).

Interpreting section 5–8–1(d)(5) as Holly suggests would create conflicts with the broad powers plainly granted in section 3–3–7(a). Under the doctrine of *in pari materia*, we must interpret statutes in harmony with other statutes on the same subject whenever possible. *People v. McCarty*, 223 Ill. 2d 109, 133 (2006). Therefore, we decline to follow Holly's construction of these sections because it nullifies

the broad general powers granted to the Board in sections 3–3–7(a) and 3–3–7(b) of the Code. Instead, we will harmonize the statutes by interpreting section 5–8–1(d)(5) to *mandate* the imposition of EHC on only the identified sex offenders. In its discretion, the Board may also choose to impose EHC on other offenders if it deems that condition "necessary to assist the subject in leading a law-abiding life" (730 ILCS 5/3–3–7(a) (West 2006)).

Nonetheless, Holly further contends that other portions of section 3–3–7 demonstrate the legislature's intent to limit EHC to specific circumstances not present in his case. Again, he misreads the statutes.

For example, Holly asserts that subsection (a)(15) of section 3–3–7 shows that the Board lacks the power to impose EHC. That subsection merely states, however, that a MSR subject must "follow any specific instructions *provided by the parole agent* that are consistent with *furthering conditions set and approved by the Prisoner Review Board* or by law, exclusive of placement on electronic detention, to achieve the goals and objectives of his *** mandatory supervised release." (Emphases added.) 730 ILCS 5/3–3–7(a)(15) (West 2006). Applying its plain language, that subsection limits only what parole agents may demand of their supervisees while the agents attempt to enforce the Board's specified MSR conditions, not what conditions the Board may initially impose.

Holly also notes the absence of EHC from the list of conditions suggested in subsection (b), as well as the specification of electronic monitoring only for sex offenders in subsection (b–1). Subsection (b) provides that "[t]he Board may *in addition to other conditions* require that the subject" comply with a variety of conditions. (Emphasis added.) 730 ILCS 5/3–3–7(b) (West 2006). Subsection (b–1), in turn, provides, "[i]n addition to the conditions set forth in subsections (a) and (b), persons required to register as sex offenders pursuant to the Sex Offender Registration Act, upon release from the custody of the Illinois Department of Corrections, may be required by the Board to comply with the following specific conditions of release," then lists those possible conditions. 730 ILCS 5/3–3–7(b–1) (West 2006). In each case, the language makes the specified MSR conditions available "in addition" to any other conditions the Board may impose. See 730 ILCS 5/3–3–7(b), (b–1) (West 2006). Subsections (b) and (b–1) plainly do not, as Holly claims, exclude EHC from the possible

conditions the Board may find "necessary to assist the subject" under section 3–3–7(a) of the Code (730 ILCS 5/3–3–7(a) (West 2006)).

Furthermore, Holly's argument that subsection (b–1)(6) limits the use of EHC to sex offenders suffers from the same infirmity as his interpretation of section 5–8–1(d)(5). Under subsection (b–1)(6), the Board may require a sex offender to be "electronically monitored for a minimum of 12 months from the date of release." 730 ILCS 5/3–3–7(b–1) (West 2006). Holly's argument improperly assumes that by requiring the Board to impose a minimum term of EHC on sex offenders, if that condition is imposed at all, the legislature intended to preclude the Board's use of EHC for any other category of offender. This interpretation does not comport with either logic or the plain language of the statute. The plain mandate that any sex offenders placed on EHC remain subject to it for at least 12 months does not implicitly address the imposition of EHC on other any type of offenders. Subsection (b–1)(6) says nothing about the Board's authority to impose EHC of any duration on other offenders. Indeed, the legislature's statutory scheme grants the Board wide discretionary authority in establishing any MSR conditions it deems "necessary" (730 ILCS 5/3–3–7(a) (West 2006)) and specifically permits the Board to impose other, unstated, conditions on offenders (730 ILCS 5/3–3–7(b) (West 2006) (allowing the Board to impose the listed conditions "in addition to other conditions")).

Holly's arguments fundamentally misunderstand the nature of the MSR conditions listed in subsections 3–3–7(b) and (b–1). They are merely examples of the conditions within the Board's wide, discretionary authority, not a list of all possible options. We agree with the appellate court's analysis in *Neville v. Walker*, 376 Ill. App. 3d 1115, 1119 (2007), rejecting the defendant's argument that EHC could not be imposed on him because subsection (b–1) was not in effect at the time of his crime. In reaching its conclusion, the *Neville* court explained:

> "In 1999 when defendant committed his crime, was convicted, and was sentenced, the Board had the discretion to impose whatever condition it deemed 'necessary to assist the subject in leading a law-abiding life.' The 2005 amendments merely enumerated conditions that may be applied specifically to sex offenders serving MSR. *Because the*

*change in law* ' "*simply explicitly articulated the [Board's] broad range of discretion which had always existed,*" ' the change did not disadvantage defendant." (Emphasis added.) *Neville*, 376 Ill. App. 3d at 1120.

Contrary to Holly's arguments, the Board has the statutory authority to impose electronic home confinement as a condition of his mandatory supervised release. Holly has no right, let alone a clear right, to demand that the Board release him from EHC during his MSR because the imposition of that condition was a proper exercise of the Board's statutory discretion. Without a clear showing of his affirmative right to relief, Holly has failed to establish his right to *mandamus* relief, and his complaint must fail. *Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 136 (1997).


### B. *Holly's Due Process Rights*

Next, we turn to Holly's argument that the imposition of EHC violated his due process rights because it subjected him to incarceration after the completion of his prison sentence. He observes that this court has previously held that "a convict is imprisoned without due process of law and entitled to his release where it is made to appear that he is held in confinement after his sentence has expired." *People ex rel. Michaels v. Bowen*, 367 Ill. 589, 593 (1937).

Initially, we note that Holly's argument misrepresents his status while on MSR. At oral argument, Holly claimed that he could either be incarcerated, or enjoy his "freedom," but that he could not lawfully be held in limbo between the two. He argued that he "was entitled to be released from the custody of the Department of Corrections after serving his sentence less credit for time served and good time credit." Under established law, however, the contrary is true.

While on MSR, Holly is not free. He remains in the custody of the Department of Corrections and is subject to ongoing supervision. Section 3–14–2(a) of the Code specifically provides that "[t]he Department shall retain custody of all persons placed on parole or mandatory supervised release *** and shall supervise such persons during their parole or release period in accord with the conditions set by the Prisoner Review Board." 730 ILCS 5/3–14–2(a) (West 2006).

Holly also remains under sentence. In section 5–8–1(d) of the

Code, the legislature established a period of mandatory supervised release to be included *as a part of every sentence of imprisonment*. 730 ILCS 5/5–8–1(d) (West 2006) ("[E]very sentence shall include as though written therein a term in addition to the term of imprisonment. *** [S]uch term shall be identified as a mandatory supervised release term").

Thus, because he was still in the Department of Corrections' custody and under sentence, Holly was not unconstitutionally subject to EHC while on MSR. Contrary to his argument, he was *not* "entitled to be released from the custody of the Department of Corrections after serving his sentence." MSR was a mandatory part of his sentence. He was not yet entitled to full freedom.

Finally, Holly argues that EHC constitutes an unlawful continuation of "custody" after the completion of his sentence because the additional physical confinement "converted [his] MSR into imprisonment." This argument confuses the concepts of custody and imprisonment. A defendant may be in custody and may not be imprisoned. See *People v. Beachem*, No. 104976, slip op. at ___ (May 22, 2008).

Here, Holly was still in the custody of the Department of Corrections and still under sentence while on MSR. He cannot, however, claim a violation of his due process rights through "imprisonment" beyond his prison sentence when this court has already recognized that home confinement is not the equivalent of incarceration in the penitentiary. As we explained in *People v. Ramos*, 138 Ill. 2d 152, 159 (1990):

> "Home confinement, though restrictive, differs in several important respects from confinement in a jail or prison. An offender who is detained at home is not subject to the regimentation of penal institutions and, once inside the residence, enjoys unrestricted freedom of activity, movement, and association. Furthermore, a defendant confined to his residence does not suffer the same surveillance and lack of privacy associated with becoming a member of an incarcerated population."

Accord *People v. Gonzales*, 314 Ill. App. 3d 993 (2000) (following *Ramos*). Even though *Ramos* and *Gonzales* arose in significantly

-10-

different contexts than the present case, the differences noted between incarceration and home confinement are nonetheless applicable. EHC during MSR does not constitute continued incarceration. Thus, there is no legal basis for Holly's claim that he was unlawfully incarcerated when he was subjected to EHC as a condition of his MSR.

## C. *The Benefit of the Plea Bargain*

Holly's final argument is that imposing EHC as a condition of his MSR violated the contract he formed with the State when he entered his negotiated guilty plea. Relying on *People v. Whitfield*, 217 Ill. 2d 177 (2005), Holly claims that the fundamental unfairness of the breach denied him due process. We, however, conclude that Holly was not denied the benefit of his plea bargain and distinguish *Whitfield*.

When Holly entered his plea, the circuit court admonished him that he would receive both a term of years inside the penitentiary as well as a term of MSR for each count of conviction. This admonishment materially distinguishes this case from *Whitfield*, where the court never admonished the defendant that he would be required to serve a term of MSR in addition to his term of imprisonment. *Whitfield*, 217 Ill. 2d at 180. Holly cites no case or additional legal authority suggesting that the lack of an admonishment at a defendant's plea hearing about the specific conditions that will be imposed during the statutory MSR term is fundamentally unfair and violative of due process.

Here, the Board did not require Holly to do anything more than the legislature mandated in section 5–8–1(d) (730 ILCS 5/5–8–1(d) (West 2006)). He was required to serve his term in prison and his term on MSR, in accordance of the admonishment he received when he entered his plea. The absence of a specific admonishment that EHC could be a potential MSR condition does not change the essential terms of his plea agreement.

As noted, the legislature granted the Board wide discretion in determining the necessary MSR conditions. See 730 ILCS 5/3–3–7(a) (West 2006). When he entered his plea, Holly voluntarily accepted the possibility that the Board would impose EHC as one of his MSR conditions. The uncertain nature of the precise MSR conditions that

would be imposed did not make the plea agreement any less fair or binding on him. This conclusion is necessarily true because, at the time of the plea, a defendant cannot claim any reasonable expectations about the exact conditions that the Board may, in its sole discretion, ultimately "deem[ ] necessary to assist the subject in leading a law-abiding life" while on MSR.

In short, Holly has no persuasive basis for his claim that he has been denied the benefit of his plea bargain or that the imposition of EHC as a condition of his MSR was fundamentally unfair and a violation of his due process rights. Thus, we reject those arguments.

## CONCLUSION

Accordingly, we hold that the Board has the statutory authority to impose EHC as a condition of MSR, that the imposition of EHC during MSR does not constitute imprisonment following the completion of a defendant's sentence, and that a defendant need not be advised of the specific, potential conditions of MSR that may be imposed to create a valid and binding plea agreement. Thus, Holly has not clearly established his affirmative right to *mandamus* relief. We, therefore, deny his request for *mandamus* and dismiss his complaint.

*Mandamus denied;*
*complaint dismissed.*

JUSTICE BURKE took no part in the consideration or decision of this case.