# Illinois Official Reports

## Appellate Court

> ### *Maggio v. Pollution Control Board*, 2014 IL App (2d) 130260

| | |
|---|---|
| Appellate Court Caption | MARTIN MAGGIO, Petitioner, v. THE POLLUTION CONTROL BOARD, THE COUNTY OF WINNEBAGO, THE WINNEBAGO COUNTY BOARD, and WINNEBAGO LANDFILL COMPANY, LLC, Respondents. |
| District & No. | Second District<br>Docket No. 2-13-0260 |
| Filed | March 31, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent county board had jurisdiction to approve respondent landfill company's application to expand its pollution control facility, since the company complied with section 39.2 of the Environmental Protection Act by properly serving all adjacent landowners by registered mail, return receipt requested, within the deadline imposed by section 39.2, and it reasonably calculated the delivery of the preapplication notices by sending them before submitting its application for approval. |
| Decision Under Review | Appeal from the Order of the Illinois Pollution Control Board, No. PCB-13-10. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael S. Blazer, of Jeep & Blazer, LLC, of Hillside, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, Janon E. Fabiano and Brett E. Legner, Assistant Attorneys General, of counsel), for appellee Pollution Control Board.

Joseph P. Bruscato, State's Attorney, of Rockford (David J. Kurlinkus, Assistant State's Attorney, of counsel), for appellees County of Winnebago and Winnebago County Board.

Charles F. Helsten, of Hinshaw & Culbertson, of Rockford, and George Mueller, of Mueller Anderson & Associates, of Ottawa, for appellee Winnebago Landfill Company, LLC.

Panel

JUSTICE SPENCE delivered the judgment of the court, with opinion. Presiding Justice Burke and Justice Schostok concurred in the judgment and opinion.

## OPINION

¶ 1    Petitioner, Martin Maggio, appeals the order of the Illinois Pollution Control Board (IPCB) affirming the decision of the Winnebago County board (County Board). The County Board conditionally approved the site location application submitted by Winnebago Landfill Company, LLC (WLC), for the expansion of WLC's existing solid waste landfill. On appeal, Maggio argues that the County Board lacked jurisdiction to approve the application, because, under section 39.2(b) of the Environmental Protection Act (Act) (415 ILCS 5/39.2(b) (West 2012)), a preapplication notice is not effective until it is received by the person to whom it is directed, and here not every person received the notice within the statutory time period. Maggio also argues that the IPCB erred in finding that WLC's service effort was reasonably calculated to achieve service 14 days before the siting application was filed. We affirm.

¶ 2                                  I. BACKGROUND
¶ 3    Section 39.2 of the Act allows county boards or municipal governing bodies to grant or deny requests for local siting approval for pollution control facilities. 415 ILCS 5/39.2 (West 2012). At issue in this appeal is the interpretation of section 39.2(b) of the Act (415 ILCS 5/39.2(b) (West 2012)), which involves preapplication notice by the applicant. That section states:

"No later than 14 days before the date on which the county board or governing body of the municipality receives a request for site approval, *the applicant shall cause written notice of such request to be served either in person or by registered mail, return receipt requested*, on the owners of all property within the subject area not solely owned by the applicant, and on the owners of all property within 250 feet in each direction of the lot line of the subject property \*\*\*." (Emphasis added.) *Id.*

¶ 4     The facts in this paragraph come from a joint stipulation by Maggio and WLC to the IPCB. On December 27, 2011, WLC mailed preapplication notices to all property owners subject to notice under section 39.2(b) by placing the notices in a post office box in Ottawa. WLC sent the notices via certified mail, return receipt requested. The following day, WLC published a copy of the notice in the Rockford Register Star. Certain mailings were not claimed and were returned to WLC by the postal service; WLC made no further effort to serve these individuals. Moreover, notices were not delivered to certain other individuals until after January 3, 2012. WLC filed its siting application with the County Board on January 17, 2012.

¶ 5     The County Board held a public hearing on the application from April 23, 2012, to April 30, 2012. The County Board approved the application on July 12, 2012.

¶ 6     Maggio appealed the County Board's decision to the IPCB on August 15, 2012. See 415 ILCS 5/40.1(b) (West 2012) (allowing 35 days from date of decision to petition IPCB for a hearing). Maggio alleged that he had participated in the hearing before the County Board as an objector. He further alleged that he "directly and indirectly" owned property adjacent to the subject landfill expansion. Maggio argued that: (1) the County Board did not have jurisdiction over WLC's siting request, because WLC failed to properly serve notice of the proceedings under section 39.2(b) of the Act, and (2) the County Board's proceedings had been fundamentally unfair. On January 2, 2013, Maggio withdrew his second claim, leaving only the jurisdictional issue.

¶ 7     The IPCB conducted a hearing on December 4, 2012. On March 7, 2013, it affirmed the County Board's decision. According to the IPCB, 102 preapplication notices were mailed out. All of the notices had arrived at the "postal units" on December 29, 2011, ready to be delivered. By January 3, 2012, eight of the notices were unclaimed and returned to WLC. Three other notices, all related to the same parcel, were not received until after WLC submitted its application for siting approval.

¶ 8     The IPCB found that WLC properly served all adjacent landowners within the deadline imposed by section 39.2(b). It further found that WLC reasonably calculated the delivery of the preapplication notices by sending them 21 days before submitting its application for siting approval. It therefore concluded that the County Board had jurisdiction to approve WLC's pollution control facility expansion.

¶ 9     Specifically, the IPCB ruled that the phrase "return receipt requested" in section 39.2(b) is satisfied if the applicant simply sends the preapplication notices through " 'registered mail, return receipt requested,' " or its functional equivalent. The IPCB cited as authority for this proposition its decision in *City of Kankakee*, Ill. Pollution Control Bd. Op. 03-125 (Aug. 7, 2003), which was affirmed by the appellate court in *Waste Management of Illinois, Inc. v. Pollution Control Board*, 356 Ill. App. 3d 229 (2005). The IPCB recognized that in *Ogle County Board ex rel. County of Ogle v. Pollution Control Board*, 272 Ill. App. 3d 184 (1995), this court held that section 39.2(b) requires actual receipt of a preapplication notice. The IPCB stated that *Ogle County Board* was effectively overruled by *People ex rel. Devine v. $30,700*

- 3 -

*United States Currency*, 199 Ill. 2d 142 (2002), where the supreme court found that the of certified mail return receipt requested was sufficient to satisfy notice requirements. The IPCB further stated that *Ogle County Board* relied on the supreme court's ruling in *Avdich v. Kleinert*, 69 Ill. 2d 1 (1977). The IPCB noted that *Avdich* involved the forcible entry and detainer statute, where notice was required to be sent to the tenant " 'by certified or mail, with a returned receipt from the addressee.' " *Id.* at 5 (quoting Ill. Rev. Stat. 1975, ch. ¶ 10). The IPCB stated that in *$30,700 United States Currency*, the supreme court stated that the notice requirement in *Avdich* was not applicable to a notice requirement with the "return receipt requested." The IPCB found the supreme court's decision in *$30,700 United States Currency* "controlling." The IPCB stated, "The legislature plainly intended two different meanings by the phrase 'with a returned receipt from the addressee,' which requires actual signed receipt of notification, and the phrase 'return receipt requested,' which allows service to be properly served upon mailing."

¶ 10    Maggio timely appealed. See 415 ILCS 5/41 (West 2012) (allowing direct appeals from rulings of the IPCB); Ill. S. Ct. R. 335 (eff. Feb. 1, 1994) (addressing direct appeals from agency rulings).

¶ 11                                    II. ANALYSIS
¶ 12                        A. Meaning of "Return Receipt Requested"
¶ 13    On appeal, Maggio argues that the IPCB erred in ruling that the County Board had jurisdiction. According to Maggio, section 39.2(b) requires proof that adjacent landowners received their preapplication notices 14 days before the siting application was filed, and merely sending the notices return receipt requested is insufficient.

¶ 14    The interpretation of section 39.2(b) presents a question of statutory construction, which is a question of law. See *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 12. Where the issue on appeal is an administrative agency's conclusion on a point of law, as here, we review *de novo* the agency's decision. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010). Still, "the interpretation of a statute by the agency charged with its administration is given some deference; but this rule is not binding and if the interpretation is erroneous, it will be rejected." *Prazen v. Shoop*, 2013 IL 115035, ¶ 40; see also *County of Kankakee v. Pollution Control Board*, 396 Ill. App. 3d 1000, 1006 (2009) ("Though we are not bound by the Board's interpretation of [a statute], we will give it weight in our own construction."). In construing a statute, our primary goal is to ascertain and give effect to the legislature's intent, which is best indicated by the plain and ordinary meaning of the statute's language. *Schultz*, 2013 IL 115738, ¶ 12.

¶ 15    Section 39.2(b)'s notice requirements are jurisdictional prerequisites that the applicant must follow in order to vest the county board with the power to hear a landfill proposal. *Kane County Defenders, Inc. v. Pollution Control Board*, 139 Ill. App. 3d 588, 593 (1985). At is section 39.2(b)'s requirement that, at least 14 days before the date on which the county board or equivalent municipal governing body receives a request for siting approval, "the applicant shall cause written notice of such request to be served either in person or by registered mail, *return receipt requested*." (Emphasis added.) 415 ILCS 5/39.2(b) (West 2012). For purposes of the statute, certified mail, return receipt requested, is the equivalent of registered mail, return receipt requested. *Waste Management of Illinois*, 356 Ill. App. 3d at 234.

¶ 16    Maggio argues that *Ogle County Board* is controlling precedent on the issue of what "return receipt requested" means. There this court stated:

> "Our supreme court has interpreted the inclusion of the 'return receipt requested' language in the context of a forcible entry and detainer action to 'clearly indicate[ ] a legislative intent that service of a notice by certified mail is not to be considered complete until it is received by the addressee.' [Citation.] The *Avdich* court specifically noted that '[i]f mere mailing of a *** notice [were] sufficient service, then proof of mailing would be all that was required to show service, and there would be little reason to require a returned receipt.' [Citation.]" *Ogle County Board*, 272 Ill. App. 3d at 195-96.

This court relied on *Avdich* in concluding that section 39.2(b)'s use of the phrase "return receipt requested" reflected the legislature's intent to "require actual receipt of the notice, as evidenced by the signing of the return receipt." *Id.* We stated that there was no evidence in that case indicating that two intended recipients, who did not receive the notice before the 14-day deadline, knew of the notice's content and purposefully refused delivery. *Id.* Affirming the IPCB's decision, we held that, because the return receipts at issue were signed after the notice deadline had passed, the notice did not comply with section 39.2(b)'s requirements, and the county board thus lacked jurisdiction to hear the application. *Id.*

¶ 17    Justice McLaren dissented from the majority opinion, reasoning that the "14-day requirement [of section 39.2(b)] relates to the mailing of the registered mail and not to actual receipt (service) of the mail." *Id.* at 197 (McLaren, P.J., dissenting).

¶ 18    Maggio argues that *Ogle County Board* is controlling on the issue at hand and has not been overruled. Maggio maintains that the IPCB had no authority to find that *Ogle County Board* had been effectively overruled. Maggio cites *Hohn v. United States*, 524 U.S. 236, 252-53 (1998), where the Supreme Court stated that opinions passing on jurisdictional issues *sub silentio* may not be interpreted to have overruled an opinion addressing the issue directly.

¶ 19    Maggio further cites the proposition that, when statutes are enacted after judicial opinions are published, it is presumed that the legislature acted with knowledge of the prevailing case law. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 305-06 (2010). Maggio maintains that the accepted construction of "registered mail, return receipt requested" in 1981, when the original statute was enacted, required receipt of notice by the recipient. See *People ex rel. Head v. Board of Education of Thornton Fractional Township South High School District No. 215*, 95 Ill. App. 3d 78, 81-82 (1981) (requirement that school district provide written notice of dismissal to teachers by registered mail required receipt of the notice within the statutory time period); *A-1 Security Services, Inc. v. Stackler*, 61 Ill. App. 3d 285, 288 (1978) ("Because registered mail requires the addressee to sign for the item in acknowledgement of delivery, the date of the signed acknowledgement is the date the item was received and thus the date of service."). Maggio also cites numerous prior decisions of the IPCB requiring physical receipt of preapplication notice, as well as the IPCB's administrative regulation requiring the same. See 35 Ill. Adm. Code 101.300(c) (2005) ("In the case of service by registered or certified mail, or by messenger service, service is deemed complete on the date specified on the registered or certified mail receipt or the messenger service receipt.").

¶ 20        The IPCB and WLC (collectively, respondents)[1] argue that the IPCB employed the proper analysis. Respondents maintain that section 39.2(b) does not contain any language conditioning the effectiveness of notice on either the addressee's receiving the notice or the applicant's receiving a signed registered mail receipt. Citing *$30,700 United States Currency*, 199 Ill. 2d at 153, respondents argue that the supreme court has held that the phrase "return receipt requested" does not indicate a legislative intent that service of notice is effective only if received. Respondents note that the appellate court has applied the reasoning of *$30,700 United States Currency* to section 39.2(b) in holding that the statute requires only that the notice is sent by registered mail, return receipt requested, and not that the recipient actually receive the notice. See *Waste Management of Illinois*, 356 Ill. App. 3d at 234; see also *County of Kankakee*, 396 Ill. App. 3d at 1013.

¶ 21        Respondents additionally argue that construing section 39.2(b) to require actual receipt would lead to unreasonable consequences, as there might be over a hundred notices, as in this case. Respondents maintain that, under Maggio's construction, if the notice were not picked up by all addressees at least 14 days before the date for the hearing stated in the notice, the notice process would have to start over. Respondents also argue that any one party could prevent the County Board from acquiring jurisdiction, by evading receipt of the notice.

¶ 22        We examine the cases cited by respondents. In *$30,700 United States Currency*, the State initiated forfeiture proceedings under the Drug Asset Forfeiture Procedure Act (Drug Forfeiture Act) (725 ILCS 150/1 *et seq.* (West 2000)). Under the Drug Forfeiture Act, where the claimant's name and address were known to the State, the State was required to give notice of pending forfeiture proceedings " 'by either personal service or mailing a copy of the notice, *** return receipt requested, to that address.' " *$30,700 United States Currency*, 199 Ill. 2d at 150 (quoting 725 ILCS 150/4(A)(1) (West 2000)). The Drug Forfeiture Act further stated, " 'Notice served under this Act is effective upon personal service, the last date of publication, or the mailing of written notice, whichever is earlier.' " *Id.* (quoting 725 ILCS 150/4(B) (West 2000)). The State sent notice to the claimants via certified mail, return receipt requested, but it did not actually receive a return receipt. *Id.* at 147. The claimants did not appear at the forfeiture proceedings, and the trial court entered a default order. *Id.* at 148. The appellate court reversed on the basis that the trial court lacked personal jurisdiction over the claimants because they were not properly served, in that under the Drug Forfeiture Act service was accomplished when the State received a signed return receipt. *Id.*

¶ 23        The supreme court reversed. It held that the express language in the Drug Forfeiture Act clearly and unambiguously provided that notice was effective upon the mailing of written notice. *Id.* at 151. The court stated, "The Act does not condition the effectiveness of notice upon receipt of the return receipt signed by the addressee, and this court will not rewrite the Act to create this requirement." *Id.* It rejected the claimants' argument that the "return receipt" language in the statute indicated the legislature's intent that notice would be perfected only when the State received the return receipt; the court stated that the legislature could have expressly conditioned notice upon the receipt of the return receipt, as it had in other acts. *Id.* at 151-52.

[1]Although we refer to the IPCB and WLC collectively as respondents, they have filed separate appellee briefs.

¶ 24    The supreme court noted that the appellate court had relied on *Avdich* for the proposition that the mere inclusion of a return receipt requirement implied that return of the receipt was required for notice to be effective. *Id.* at 152. The supreme court stated that "*Avdich* is not authority for the proposition that all enactments which contain the 'return receipt' requirement demand return of the receipt to perfect service." *Id.* at 152-53. The supreme court stated that, to the contrary, it demonstrated that the legislature could expressly condition service upon return of the receipt, as the statute in *Avdich* stated that notice could be served " 'by sending a copy of said notice to the tenant by certified or registered mail, *with a returned receipt from the addressee*.' " (Emphasis added.) *Id.* at 153 (quoting 735 ILCS 5/9-211 (West 2000)). The supreme court pointed out that, in contrast, the Drug Forfeiture Act required only a " 'return receipt *requested*.' " (Emphasis in original.) *Id.* (quoting 725 ILCS 150/4(A)(2) (West 2000)). The supreme court stated, "If we afford the language in each provision its plain and ordinary meaning, one demands the return of the receipt while the other merely demands a request." *Id.*

¶ 25    The supreme court further disagreed with the claimants' argument that the only advantage of certified mail with a return receipt requested is to obtain proof of delivery; the court stated that it also gave the sender proof of mailing and served the claimant's interest by alerting him or her to the importance of the letter's contents. *Id.* at 153-54. Finally, the supreme court stated that the Drug Forfeiture Act required a liberal construction to achieve its overall purpose and that conditioning the completion of notice upon receipt would be an obstacle to enforcement, because claimants in such cases often have no true interest in the property and refuse to sign for the mail when it arrives. *Id.* at 154.

¶ 26    Subsequently, the appellate court relied on *$30,700 United States Currency* in holding that, under section 39.2(b):

> "All that is required by the statute is that notice is sent by registered mail, return receipt requested. Jurisdiction is not premised on the recipient's actions, once the letter is received, but on the form of the sending of the letter; jurisdiction will exist as long as the letter is sent by the prescribed method." *Waste Management of Illinois*, 356 Ill. App. 3d at 234.

See also *County of Kankakee*, 396 Ill. App. 3d at 1013 ("The plain language of subsection 39.2(b) *** does not require actual receipt of mailed notice.").

¶ 27    We agree with the above-cited cases and respondents that the plain language of section 39.2(b) does not require that the sender obtain returned receipts in order for service to be effective. Moreover, this result is unavoidable under the supreme court's analysis in *$30,700 United States Currency*. While that case did not directly overrule *Ogle County Board*, it rejected the same type of interpretation of *Avdich* that *Ogle County Board* had relied on in the first place. Again, the supreme court stated that "*Avdich* is not authority for the proposition that all enactments which contain the 'return receipt' requirement demand return of the receipt to perfect service," but rather that the case demonstrated that the legislature could expressly condition service upon return of the receipt, in that the statute stated that notice could be served by sending a copy of the notice certified or registered mail, " '*with a returned receipt from the addressee*.' " (Emphasis added.) *$30,700 United States Currency*, 199 Ill. 2d at 152-53 (quoting 725 ILCS 5/9-211 (West 2000)). The supreme court clearly differentiated between statutes requiring the return of the receipt and statutes requiring simply a request for the return of the receipt. *Id.* at 153. Here, section 39.2(b) mandates only

that a return receipt be "requested" (415 ILCS 5/39.2(b) (West 2012)); section 39.2(b) does not require proof that the recipient actually received the notice.

¶ 28 Contrary to Maggio's contentions, the IPCB did not rely on a case addressing a jurisdictional issue *sub silentio*, as *$30,700 United States Currency* directly addressed the jurisdictional question before it and also discussed the phrase "return receipt requested," which is present in the statute at issue here. Further, the fact that, when section 39.2(b)'s precursor was enacted, one case involving a different statute had interpreted the phrase "return receipt requested" as requiring receipt of the notice does not establish that it was prevailing case law on the issue. Indeed, the additional case that Maggio cites involving registered mail more generally, *A-1 Security Services, Inc.*, 61 Ill. App. 3d at 287-88, was disagreed with numerous times on the relevant issue, including before the original statute here was enacted. See *Thompson v. Civil Service Comm'n*, 63 Ill. App. 3d 153, 155 (1978) (disagreeing with *A-1 Security Services*); see also *Nudell v. Forest Preserve District*, 207 Ill. 2d 409, 420-21 (2005) (same). Finally, regardless of the requirements in the Administrative Code, administrative rules that conflict with a statute are invalid. *Klein Construction/Illinois Insurance Guaranty Fund v. Illinois Workers' Compensation Comm'n*, 384 Ill. App. 3d 233, 237 (2008). That is, to the extent that the administrative rules conflict with section 39.2(b), we follow the statute's requirements.[2]

¶ 29 Maggio's arguments attempting to distinguish *$30,700 United States Currency* are not persuasive. Maggio argues that *$30,700 United States Currency* involved a statute that clearly stated that notice was effective upon mailing, unlike in this case. Maggio also notes that, under the Drug Forfeiture Act, the claimant has the burden to notify the State of a change of address prior to the mailing of notice (see *$30,700 United States Currency*, 199 Ill. 2d at 154-55), whereas section 39.2 requires the applicant to determine, from tax records, the individuals entitled to notice (see 415 ILCS 5/39.2 (West 2012)). Maggio's arguments would potentially have some merit if the supreme court's analysis were limited to the points he cites. However, the supreme court also discussed *Avdich* in detail in a manner that undermined *Ogle County Board*'s interpretation of the case. Again, *Avdich* had served as *Ogle County Board*'s authority for reading section 39.2(b) to require receipt of notice, so *Ogle County Board*'s reasoning on this issue is no longer valid. Instead, we follow the reasoning in *$30,700 United States Currency* and conclude that section 39.2(b) does not require receipt of notice.

¶ 30                                    B. Reasonable Time to Ensure Delivery

¶ 31 Next, Maggio argues that the IPCB erred in finding that WLC's service effort was reasonably calculated to achieve service on all individuals entitled to notice. He maintains that there is nothing in section 39.2(b) that allows for such a "reasonableness" assessment, but rather the statute requires that notice be served no later than 14 days before the siting application is filed. He again cites the Administrative Code provision stating, "In the case of service by registered or certified mail, or by messenger service, service is deemed complete on the date specified on the registered or certified mail receipt or the messenger service

_____

[2]We do not purport to find section 101.300(c) of title 35 of the Administrative Code (35 Ill. Adm. Code 101.300(c) (2005)) entirely invalid but, rather, find that it does not take precedence over the plain language of section 39.2(b) and relevant case law.

- 8 -

receipt." 35 Ill. Adm. Code 101.300(c) (2005). He therefore argues that, as did not occur here, notice must be received at least 14 days before the siting application is filed.

¶ 32    Maggio maintains that, even otherwise, the stipulated facts show that WLC's service effort was not reasonably calculated to achieve timely service on all persons entitled to notice, because the notices were mailed only one week before the service deadline and that week included a "shortened delivery day" (New Year's Eve) and a full delivery holiday (New Year's Day). He argues that WLC further delayed service by placing the notices in a mailbox in Ottawa, where WLC's counsel is located, rather than delivering the notices to the post offices for Rockford, Sycamore, and Monroe Center, where the notices were to be served. Finally, he argues that WLC could have used tracking information to determine that certain notices were not being delivered quickly enough, or at all, and it could have then made some alternative attempt at service.

¶ 33    Again, section 39.2(b) states: "No later than 14 days before the date on which the county board *** receives a request for site approval, the applicant shall cause written notice of such request to be served either in person or by registered mail, return receipt requested" to adjoining landowners. 415 ILCS 5/39.2(b) (West 2012).

¶ 34    On the subject of reasonable time to ensure delivery, the IPCB stated in its decision as follows. It had previously held that registered mailings must be sent in a manner reasonably calculated to result in timely receipt. See *City of Columbia*, Ill. Pollution Control Bd. Op. 85-177 (Apr. 3, 1986) (the IPCB would not construe the Act as requiring that preapplication notice be received by all parties at least 14 days before the application's filing, but service of notice must be initiated sufficiently far in advance to reasonably expect receipt at least 14 days in advance of the filing); see also *Waste Management*, Ill. Pollution Control Bd. Op. 89-28 (Aug. 10, 1989) (applying reasonable expectation rule). For example, it had held that sending the notices three days prior to the deadline did not ensure the delivery of the notices before the deadline. See *Carmichael*, Ill. Pollution Control Bd. Op. 93-114 (Oct. 7, 1993). It had also followed a rebuttable presumption in its procedural rules that mail will be delivered within four days. See *Waste Management*, Ill. Pollution Control Bd. Op. 89-28. Here, the preapplication notices were sent seven days before the January 3, 2012, deadline even accounting for New Year's Day. Tracking information for all of the undelivered notices indicated that they had " 'arrived at the unit' " ready for delivery on December 29, 2011. Further, 94 of the 102 notices were delivered before the deadline, and only one parcel did not receive the notice before WLC submitted its application on January 17, 2012. Therefore, in mailing the notices on December 27, 2011, WLC reasonably calculated that they would be delivered no later than 14 days before it filed its application.

¶ 35    On appeal, WLC argues that its notices were served on December 27, 2011, upon delivery to the post office, 21 days before the filing of the siting application.

¶ 36    The IPCB argues on appeal that, while section 39.2(b)'s "return receipt requested" language does not require that notice be actually received at least 14 days before the application's filing, it also does not state that service of the notices is complete upon mailing. The IPCB argues that, because the statute is silent on when the notices must be received, the IPCB, as the agency empowered to enforce and implement the Act, examined whether the notices were mailed sufficiently far in advance to reasonably expect that they would be received at least 14 days before the application was filed. The IPCB argues that its

construction furthers the purposes of section 39.2(b)'s notice requirement because it gives surrounding landowners adequate time to comment on a proposed site.

¶ 37    Regarding IPCB's last point, we note that section 39.2(b) requires applicants to "cause written notice *** to be served" at least 14 days before a site application is even filed (415 ILCS 5/39.2(b) (West 2012)), so it is unclear how landowners would use that time to officially (and knowledgeably) comment on the proposed site. Landowner comments will generally be heard after the application is actually filed, before and during a public hearing on the application, with the public hearing occurring no sooner than 90 days after the county board receives the application. See 415 ILCS 5/39.2(d) (West 2012). Landowners may also comment in letters postmarked up to 30 days after the last public hearing. See 415 ILCS 5/39.2(c) (West 2012). Therefore, the IPCB's argument that its construction of "return receipt requested" furthers the statute's purpose by giving surrounding landowners adequate time to comment on a proposed site is without merit.

¶ 38    Returning to Maggio's argument, we disagree that notice must be received at least 14 days before the siting application is filed. As discussed, our supreme court has interpreted the language "return receipt requested" to mean that return of the receipt is not required for perfected service (*$30,700 United States Currency*, 199 Ill. 2d at 151-53), and, if we were to interpret section 39.2(b) as requiring proof of the receipt of the notices at least 14 days ahead of the application's filing, it would be akin to creating such a condition. "We may not add exceptions, limitations, or conditions to statutes in derogation of their plain meaning." *Holly v. Montes*, 231 Ill. 2d 153, 159 (2008).

¶ 39    As mentioned, in his dissent in *Ogle County Board*, Justice McLaren stated that the "14-day requirement [of section 39.2(b)] relates to the mailing of the registered mail and not to actual receipt (service) of the mail." *Ogle County Board*, 272 Ill. App. 3d at 197 (McLaren, P.J., dissenting). This interpretation is consistent with WLC's argument on appeal. Justice McLaren reasoned that the phrase "cause to be served" meant that the mailing of the letter was subject to the 14-day requirement, because the phrase "fourteen days" was not located after the phrase "to be served" and because the word "cause" would otherwise have no significance. *Id.* If Justice McLaren and WLC are correct that the statute simply requires that the notices be mailed, return receipt requested, at least 14 days before the siting application is filed, WLC clearly complied with the statute by mailing the notices 21 days before it filed its application.

¶ 40    Conversely, if the IPCB's interpretation is correct, that the statute allows it to examine whether notices were mailed far enough in advance to reasonably expect that they would be received at least 14 days before the application was filed, the IPCB's determination that WLC complied with this standard is not against the manifest weight of the evidence.[3] Contrary to Maggio's argument, there is no evidence in the record that New Year's Eve is a "shortened delivery day," and, as the IPCB points out, New Year's Day in 2012 was a Sunday on which there would not have been mail delivery anyway. We find no basis to disturb the IPCB's finding that by sending the notices on December 27, 2011, WLC reasonably calculated that they would be delivered no later than January 3, 2012, 14 days before it filed its application on January 17, 2012. Although Maggio points out some

_____

[3]When the parties dispute an administrative agency's factual findings, we apply a manifest-weight-of-the-evidence standard. *Provena Covenant Medical Center*, 236 Ill. 2d at 386.

alternative measures that WLC could have taken to better ensure that notices were received at least 14 days before the application's filing, such measures were not required by section 39.2(b).

¶ 41 Based on our resolution that WLC complied with section 39.2(b) regardless of whether the statute (a) requires that the notices simply be sent by registered mail (return receipt requested) at least 14 days before the siting application is filed, or (b) is silent of the issue of when service is complete, allowing the IPCB to examine whether notices were mailed sufficiently far in advance to reasonably expect that they would be received at least 14 days before the filing, we do not definitively resolve which interpretation is correct.

¶ 42                                    III. CONCLUSION

¶ 43 In sum, we conclude that section 39.2(b) does not require that landowners actually receive preapplication notices at least 14 days before the siting application is filed. We further conclude that the IPCB did not err in finding that WLC complied with section 39.2(b) by mailing the notices by registered mail, return receipt requested, 21 days before it filed its siting application.

¶ 44 For the foregoing reasons, we affirm the decision of the IPCB.

¶ 45 Affirmed.