2015 IL App (3d) 140853

Opinion filed October 15, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| SHAWN WHIRL, | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Knox County, Illinois. |
| | ) | |
| and | ) | |
| | ) | |
| GLORIA CASTANEDA, | ) | Appeal No. 3-14-0853 |
| | ) | Circuit No. 14-MR-110 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID CLAGUE, Knox County Sheriff; | ) | The Honorable |
| SCOTT ERICKSON, Knox County Clerk | ) | Scott Shipplett, |
| and KEVWE AKPORE, Warden, Hill | ) | Judge, Presiding. |
| Correctional Center, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1    Plaintiff-appellant, Shawn Whirl, an inmate at the Hill Correctional Center (the Center) –

a facility under the direction of the Illinois Department of Corrections (IDOC) – appeals from the

order of the circuit court of Knox County denying his *pro se mandamus* petition against defendants-appellees, David Clague, Knox County Sheriff, Scott Erickson, Knox County Clerk, and Kevwe Akpore, Hill Correctional Center Warden (the Collective). The petition alleged that the Collective refused to comply with the Center's procedures regarding inmate marriages thus violating his right to marry. The trial court found the petition to be frivolous and patently without merit. For the reasons that follow, we reverse the trial court's order denying Whirl's *mandamus* petition.

¶ 2                                        FACTS

¶ 3        The following facts have been gathered from the record on appeal and Whirl's brief. The appellees declined in writing to submit a brief.

¶ 4        A memo from the Center dated February 1, 2013, and issued by "chaplain," sets out the Center's requirements and procedures for inmates who desire to marry. The memo states that it is "[t]he bride's responsibility to apply for the marriage license at the Knox County Clerk's office." With regard to the inmate's part in acquiring the marriage license, the memo states that "[a] date and time will be arranged with the county clerk for the purpose of acquiring the Marriage License."[1]

¶ 5        On November 13, 2013, a revised memo was issued by Manuel Rojas, Chaplain II, again setting out the Center's requirements and procedures for inmates who desire to marry. This memo included additional bolded text related to the inmate's part in acquiring the marriage

---

[1] Section 203 of the Illinois Marriage and Dissolution of Marriage Act allows for the issuance of a license to marry by the county clerk only after "a marriage application has been completed and signed by both parties to a prospective marriage and both parties have appeared before the county clerk." 750 ILCS 5/203 (West 2014).

license stating "[t]he new *procedure* for the County Clerk's office is to be furloughed to his office with a cost of $80.72 plus $30.00 for the [marriage] licenses."

¶ 6    In 2013, Whirl submitted paperwork to the personnel identified in the Center's procedures so that he could marry Gloria Castaneda. In 2014, Whirl learned of the new procedural step for inmates to acquire a marriage license and he waited to be furloughed to secure the license. After hearing nothing from anyone at the Center about proceeding with his marriage, Whirl filed a grievance with the IDOC. About a month later he was informed that all marriages were on hold because the Knox County sheriff had denied the Center staff the ability to furlough inmates to the county clerk's office for the purpose of securing marriage licenses. Castaneda tried to acquire the license on her own from the Knox County clerk but was turned away because both she and Whirl had to be present to sign the license. See 750 ILCS 5/203 (West 2014).

¶ 7    Whirl was told by the Center personnel to submit another grievance this time against the Knox County sheriff and Knox County clerk. However, because grievances cannot be filed against entities outside of IDOC's authority, Whirl filed a *pro se mandamus* complaint contending that his right to marry was violated when (1) the Knox County sheriff refused his writ to be brought to the courthouse to have the marriage "procedure" performed; (2) the clerk of the court refused to come to the prison to perform the duty of issuing marriage licenses; and (3) the Center's warden refused to facilitate a reasonable solution between the entities.

¶ 8    On September 25, 2014, the circuit court issued an opinion letter with regard to Whirl's *mandamus* petition. It held that the petition was frivolous and patently without merit because Whirl did not have a right "to get married at the venue of his choice, let alone compel through *mandamus* transportation to the ceremony."

¶ 9    Whirl filed a late notice of appeal, which was granted.

3

¶ 10                                         ANALYSIS

¶ 11        The issue before this court is whether the circuit court erred in dismissing Whirl's *pro se*

*mandamus* petition alleging the collective violated his right to marry by frustrating his ability to

acquire a marriage license and ultimately to marry. The only brief filed in this appeal is Whirl's.

He asserts that the circuit court misunderstood the relief he was requesting which was simply for

the collective to follow through with the Center's procedural step of furloughing him to the

county clerk's office on a scheduled day and time to acquire his marriage license.

¶ 12        In a letter submitted by the State's Attorney's Office in response to Whirl's appeal, the

State's Attorney acknowledged its pendency but stated it did not intend to file any brief in this

matter. It asserted also that the Illinois Attorney General's Office purportedly notified the

Appellate Clerk's Office that it too did not intend to file a brief in this matter. The State's

Attorney's Office noted in its letter, however, that it stands by the finding of the circuit court that

the matter was "frivolous and patently without merit."

¶ 13        "Where contentions of the appellant have not been countered by [a brief filed by the

appellee], a reviewing court could accept appellant's contention as correct and summarily reverse

the judgment of the trial court, or if justice requires it, the points raised by the appellant can be

examined in order to ascertain their merit." *Coates v. Coates*, 64 Ill. App. 3d 914, 915 (1978).

Additionally, when the record is simple and the claimed error is such that the reviewing court

can easily decide the matter without the aid of an appellee's brief, the court should decide the

merits of the appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d

128, 133 (1976).

¶ 14        The extraordinary remedy of *mandamus* is employed to "enforce, as a matter of right, the

performance of official duties by a public officer where no exercise of discretion on his part is

4

involved." (Internal quotation marks omitted.) *Holly v. Montes*, 231 Ill. 2d 153, 159 (2008). To obtain relief, a plaintiff must establish a clear right to *mandamus* by showing: (1) an affirmative right to relief; (2) defendant's duty to act; and (3) defendant's authority to comply with the order. *Id*. The remedy of *mandamus* may be used only to compel a public official or body to perform a ministerial duty in which the official exercises no discretion. *Hatch v. Szymanski*, 325 Ill. App. 3d 736, 739 (2001). Because the record is simple and the issue can be easily decided, we find that justice does require our examination and a decision on the merits of this appeal.

¶ 15    The ability to get married is a constitutionally protected right recognized even in the prison context. *Turner v. Safley*, 482 U.S. 78, 96 (1987). The correctional institution must allow a prison inmate the opportunity to exercise this right so long as it is not "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." (Internal quotation marks omitted.) *Id*. at 95. No such inconsistencies have been alleged or identified by the named respondents.

¶ 16    In this case, the Center's memo lists the requirements and a structured procedure for inmates who want to exercise their constitutional right to marry. As part of that procedure, inmates are "to be furloughed to [the county clerk's] office with a cost of $80.72 plus $30.00 for the license" to get their marriage license. Unlike other requirements and procedures listed prior to this one, such as the determination of whether the inmate is a "high or extremely high escape risk" or the Warden's ability to decide whether the inmate can marry if the intended-spouse is an ex-offender, the Center's memo affords no discretion with regard to the step involving the furloughing of an inmate for the purpose of getting a marriage license. Notably, the reply to Whirl's grievance did not assert that he failed to meet any of the Center's requirements but only

5

that inmate furloughs to the county clerk's office for marriage licenses were being stalled by the Knox County sheriff.

¶ 17 Now Whirl's *mandamus* petition states that his right to marry was "willfully violated when the Knox County sheriff was to have refused any inmate a writ to be brought to the courthouse to have the marriage procedure performed." If this statement is read in isolation, the trial court and the dissent's positions are correct. An inmate requesting to be furloughed to a location of his choosing to have his wedding ceremony performed at a time of his choosing is outside the scope of the IDOC's outlined procedures or what was contemplated in the Supreme Court's holding in *Turner*.

¶ 18 However, we do not read this statement in isolation and find that Whirl was not asking to have his wedding ceremony at a location and time of his choosing or for transportation to that location. He was requesting that the Collective be compelled to comply with the above-quoted nondiscretionary procedural step. Immediately after his statement with reference to the Knox County sheriff, Whirl states that "[t]he clerk of the court *also* refused to commute to the prison to perform duties of issuing the marriage license." Additionally, the Center's memo explicitly refers to being furloughed to the county clerk as a "procedure." It also shows the acquisition of a marriage license is simply one *procedural* step[2] required of an inmate before he can exercise his constitutional right to marry.

¶ 19 The essence of Whirl's petition does not seek to compel the Sheriff to take him to the courthouse *or* the clerk to come to the correctional facility to issue the license *or* the warden to

[2] Subsequent to this procedural step, the Center's memo lists other requirements the inmate must satisfy before they are finally allowed to marry including pre-marital counseling sessions, gaining approval of the chaplain's office to marry, and gaining approval of the chaplain and warden for the ceremony officiate and guest list. The memo also states that "all marriages will take place in one of the interview rooms outside the visiting room."

6

facilitate a solution. Rather it seeks to compel the three of them to desist from actions that frustrate his constitutional right to marry and do what is necessary for him to secure a marriage license. Therefore, the circuit court erred in denying Whirl's *mandamus* relief.

¶ 20                                CONCLUSION

¶ 21        For the forgoing reasons, the judgment of the circuit court of Knox County is reversed.

¶ 22        Reversed.

¶ 23        JUSTICE SCHMIDT, dissenting.

¶ 24        I respectfully dissent.  Since when did a procedural rule of IDOC create a non-discretionary duty to act on the part of a county sheriff, county clerk, or any other county official?  The trial court got it right.  The petition for writ of *mandamus*, like this appeal, is frivolous and patently without merit.  I also note that appellant did not attach his application for marriage as an exhibit in this appeal.

¶ 25        So, is this sheriff supposed to deliver appellant to the county clerk's office?  Or, is the county clerk to travel to the prison?  What does the judge order?  There is a reason the IDOC could not address a grievance against the sheriff and county clerk: It has no control over them. The majority acknowledges that "[t]he extraordinary remedy of *mandamus* is employed to 'enforce, as a matter of right, the performance of official duties by a public officer where no exercise of discretion on his part is involved.' " *Supra* ¶ 14 (quoting *Montes*, 231 Ill. 2d at 159). Does the sheriff have a nondiscretionary duty to provide limo service to persons in custody of the IDOC?  What day?  At what time?  With how many deputies as guards?  Does the county clerk have a nondiscretionary duty to appear at a state prison by virtue of a prison policy?

¶ 26        There is no allegation that the DOC transported appellant to the county courthouse and the sheriff would not allow entry.  Likewise, there is no allegation that the DOC transported

appellant to the clerk's office only to be turned away. If *mandamus* is appropriate against anyone, it is the warden. While an inmate has a right to get married, it is in the county in which he or she is housed by the DOC. The DOC can transport the inmate to the county clerk's office. I fail to understand how a prison policy can create nondiscretionary duties on the part of a county sheriff and clerk.

¶ 27