# Illinois Official Reports

## Supreme Court

---

### *Cordrey v. Prisoner Review Board*, 2014 IL 117155

---

| | |
|---|---|
| Caption in Supreme Court: | JOHNNY CORDREY, Petitioner, v. THE PRISONER REVIEW BOARD *et al.*, Respondents. |
| Docket No. | 117155 |
| Filed | November 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a petitioner in an original *mandamus* action alleged that he had been viewed as committing a "violation at the door" and was incarcerated during his term of mandatory supervised release after the housing outside of prison required by respondent Prisoner Review Board could not be obtained, the supreme court found *mandamus* inappropriate and did not assume jurisdiction where the specific criteria for issuance of the writ were not met. |
| Decision Under Review | Original action for *mandamus* or *habeas corpus* relief. |
| Judgment | Writ denied. |

| Counsel on Appeal | E. King Poor and Michael S. Rhinehart, of Quarles & Brady LLP, of Chicago, for petitioner. |
|---|---|
| | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Brett E. Legner, Assistant Attorney General, of counsel), for respondents. |
| | Alexa A. Van Brunt and Alan Mills, of Chicago, for *amici curiae* ACLU *et al.* |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. |
| | Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1    The petitioner, Johnny Cordrey, filed a motion for leave to file an original complaint for *mandamus* in this court pursuant to Illinois Supreme Court Rule 381 (Ill. S. Ct. R. 381 (eff. Mar. 1, 2001)). Cordrey asks this court to compel respondents, the Prisoner Review Board and Rick Harrington, Warden, to release Cordrey to serve his mandatory supervised release at a suitable host location outside of prison. Cordrey also requests that this court declare the practice of "violating at the door" to be unconstitutional as a violation of due process and equal protection.

¶ 2                                    BACKGROUND

¶ 3    In October 1993, Cordrey was sentenced to 36 years in prison for aggravated criminal sexual assault (720 ILCS 5/12-14 (West 1992)), along with a concurrent term of 30 years for aggravated kidnapping (720 ILCS 5/10-2 (West 1992)). Cordrey also was sentenced to a three-year term of mandatory supervised release (MSR) (730 ILCS 5/3-3-3(c) (West 1992)).

¶ 4    In November 2012, the Prisoner Review Board entered an order imposing certain conditions on Cordrey's MSR. Cordrey was required to attend anger management counseling, sex offender counseling, and outpatient mental health counseling. Cordrey was prohibited from having contact with his victim and was required to have biweekly visits with his parole officer for two years. Cordrey was required to register as a sex offender, with victim notification, and was subject to electronic monitoring for the duration of his MSR. The Prisoner Review Board also strongly recommended GPS monitoring.

¶ 5    Cordrey was scheduled to begin his MSR on April 12, 2013. On that day, the Department of Corrections issued a parole violation report stating that Cordrey violated his parole because he had no suitable host site where he could serve his MSR. Specifically, the report stated:

"Offender is in violation of the Rule #16 in that he is mandated by the Prisoner Review Board to be supervised on electronic monitoring. This agency attempted to place the offender at (all) places with family and/or friends in the community and no suitable host site was found to supervise the offender on electronic monitoring. This agency attempted to place the offender at (all) places that the Illinois Department of Corrections would pay for and the paid placements for any number of reasons could not accept the offender. The offender is unable to fulfill the mandate by electronic monitoring place[d] by the Prisoner Review Board."

Cordrey was then returned to the Menard Correctional Center to serve his term of MSR in prison.

¶ 6 Cordrey filed a grievance concerning the denial of his release. The Department of Corrections' Field Services unit responded that every effort was being made to find a place for Cordrey. Field Services stated that due to Cordrey's sex offender status, it had not been able to locate suitable placement.

¶ 7 Cordrey then filed a *pro se* petition for writ of *habeas corpus* as well as an application to sue or defend as a poor person. Cordrey's application to sue or defend as a poor person was allowed. The Attorney General was directed to file a response to Cordrey's motion. After the Attorney General filed its response, counsel was appointed to represent Cordrey.

¶ 8 Counsel then filed a motion for leave to file a petition for *mandamus* or *habeas corpus* relief.[1] This court allowed that motion and directed the parties to brief the issue. Counsel from MacArthur Justice Center, Northwestern University School of Law, and the Uptown People's Law Center, were given leave to file an *amicus curiae* brief on behalf of 18 organizations in support of Cordrey's petition.[2]

¶ 9 The petition for *mandamus* challenges the practice sometimes referred to as "violating at the door." As described by the federal district court in *Armato v. Grounds*, 944 F. Supp. 2d 627, 631 n.3 (C.D. Ill. 2013):

"Violating an offender at the door is a legal fiction wherein it is imagined that the offender is released from custody, placed on MSR, but when he leaves the institution he is in violation of his supervision terms and he is immediately placed back in custody. In reality, the offender simply remains incarcerated until a MSR prerequisite is satisfied. This can continue until either (1) the term of MSR expires, or (2) the prerequisite is satisfied."

---

[1] In his reply brief, Cordrey concedes that *habeas corpus* would not be the correct remedy in this case, as he is serving MSR while in prison. See *Barney v. Prisoner Review Board*, 184 Ill. 2d 428, 430 (1998) (*habeas corpus* relief is not available to a person currently serving MSR).

[2] The organizations include: ACLU of Illinois; Bluhm Legal Clinic, Northwestern University School of Law; Cabrini Green Legal Aid; Center on Wrongful Conviction of Youth, Northwestern University School of Law; Chicago Appleseed Fund for Justice; Children and Family Justice Center, Northwestern University School of Law; Chicago Legal Advocacy for Incarcerated Mothers; Criminal & Juvenile Justice Project, University of Chicago Law School; Daniel Coyne, Clinical Professor of Law, IIT Chicago-Kent College of Law; The John Howard Association; Illinois Public Defender Association; Law Office of the Cook County Public Defender; League of Women Voters of Illinois; Office of the State Appellate Defender; Project I-11; Roosevelt University, Department of Human and Community Renewal; The Sargent Shriver National Center on Poverty Law; and Tamms Year Ten.

¶ 10    Cordrey's complaint alleges that more affluent offenders, who can afford suitable housing, can walk out the prison door, while the indigent offender is violated at the door and sent back to prison. The complaint charges that this unequal treatment—granting liberty to one offender and denying it to another based on the size of their bank accounts—violates the constitutional guarantees of due process and equal protection. Cordrey asks that this court declare the practice of "violating at the door" unconstitutional as a violation of due process and equal protection. Cordrey also asks this court to order him released to serve his MSR at a suitable host location outside of prison.

¶ 11                                    ANALYSIS

¶ 12    As a preliminary matter, we must address whether this case is now moot. In a joint status report filed by the parties on June 13, 2014, the parties noted that Cordrey was scheduled for release on October 14, 2014. It appears from our review of the Illinois Department of Corrections website (http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited Oct. 27, 2014)), that Cordrey is not currently an inmate.[3] Because Cordrey has been released from MSR, we can no longer grant him the relief requested in his complaint.

¶ 13    Anticipating that his case might become moot, Cordrey asserted in the joint status report that, even if this court did not decide his case until after he was released from prison, this case would not become moot because it fits within the public interest exception to the mootness doctrine.

¶ 14    The public interest exception to the mootness doctrine applies where "(1) the question is of a substantial public nature; (2) there is a need for an authoritative decision to provide future guidance; and (3) the situation is likely to recur." *In re J.B.*, 204 Ill. 2d 382, 387 (2003).

¶ 15    As we observed in *Holly v. Montes*, 231 Ill. 2d 153, 158 (2008), every convicted felon in Illinois, except those serving a natural life sentence, is required to serve a term of MSR. See 730 ILCS 5/5-8-1(d) (West 2012). In *Holly*, the plaintiff filed an original claim for *mandamus* in this court seeking an order directing the Prisoner Review Board to eliminate the condition of electronic home confinement (EHC) during his MSR. Prior to oral argument, however, the plaintiff's EHC was terminated and his electronic monitoring device was removed. The court nonetheless elected to address the issue under the public interest exception. The court noted that:

> "a large group of felons will be on MSR at least once, exposing each to the possibility that the Board will impose EHC. The vast number of felons potentially affected by the Board's allegedly improper imposition of EHC satisfies both the first and third prongs of the public interest exception test, requiring a question of a substantial public nature and a likeliness of recurrence." *Holly*, 231 Ill. 2d at 158.

---

[3]This court may take judicial notice of Department of Corrections records because they are public documents. See *People v. Mata*, 217 Ill. 2d 535, 539-40 (2005) (court may take judicial notice of matters that are readily verifiable from sources of indisputable accuracy); *People v. Steward*, 406 Ill. App. 3d 82, 93 (2010) (court may take judicial notice of Department of Corrections records because they are public documents).

¶ 16    With regard to the second prong of the test, *Holly* noted the substantial litigation addressing the imposition of EHC during MSR in both Illinois and federal courts. *Id*. *Holly* concluded that the ongoing litigation of EHC warranted an authoritative determination on the validity of the imposition of EHC as a condition of MSR. *Id*.

¶ 17    As Cordrey points out in his brief, challenges to the practice of "violating at the door" have been raised in numerous Illinois and federal cases. See *Armato v. Grounds*, 944 F. Supp. 2d 627 (C.D. Ill. 2013); *Murdock v. Walker*, No. 08 C 1142, 2014 WL 916992 (N.D. Ill. Mar. 10, 2014); *Parker v. Roeckman*, No. 3:13-CV-206-DRH-DGW, 2013 WL 6511486 (S.D. Ill. Oct. 8, 2013); *Webb v. Robert*, No. 13-CV-00671-MJR, 2013 WL 6698081 (S.D. Ill. Aug. 16, 2013); *Hughes v. Walker*, No. 08-1317, 2009 WL 2877081 (C.D. Ill. Sept. 4, 2009); *United States ex rel. Neville v. Ryker*, No. 08 C 4458, 2009 WL 230524 (N.D. Ill. Jan. 30, 2009); *Lucas v. Department of Corrections*, 2012 IL App (4th) 110004. Consequently, we find that the number of offenders potentially affected by the Prisoner Review Board's allegedly unconstitutional practice of "violating at the door," as well as the substantial litigation addressing the practice in both Illinois and federal courts, satisfies all three requirements of the public interest exception to mootness. The question is one of substantial public nature; there is a need for an authoritative decision to provide future guidance; and the situation is likely to recur. Because we find that Cordrey's case falls within the public interest exception to the mootness doctrine, we will address the merits of Cordrey's request for *mandamus*.

¶ 18    This court may exercise original jurisdiction in *mandamus* actions. Ill. Const. 1970, art. VI, § 4(a). To obtain relief, a plaintiff must establish a clear right to *mandamus*. *Holly*, 231 Ill. 2d at 159. "*Mandamus* is an extraordinary remedy to enforce, as a matter of right, 'the performance of official duties by a public officer where no exercise of discretion on his part is involved.' [Citation.]" *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229 (1999). "[A] writ of *mandamus* will be awarded only if a plaintiff establishes a clear right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ." *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 465 (2004). There also must be no other adequate remedy. *Snyder*, 208 Ill. 2d at 465. *Mandamus* is improper if it substitutes the court's discretion or judgment for that of the official. *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 183-84 (2009). In addition, only issues of law will be considered in original actions for *mandamus*. Ill. S. Ct. R. 381(a) (eff. Mar. 1, 2001). If factual questions are present, *mandamus* is inappropriate and this court will not assume jurisdiction. *Touhy v. State Board of Elections*, 62 Ill. 2d 303, 312 (1976).

¶ 19    At the outset, we note that Cordrey's complaint for *mandamus* does not allege a clear right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ of *mandamus*, as well as the lack of other adequate remedies. Cordrey's complaint generally states that *mandamus* is the proper remedy for constitutional violations of parole procedures. Cordrey's complaint also states that his constitutional rights to due process and equal protection were violated when he was not released on MSR because he is indigent. Based on those assertions, Cordrey asks this court to compel respondents, the Prisoner Review Board and Rick Harrington, Warden, to release Cordrey to serve his MSR at a suitable host location outside of prison. We find these assertions are insufficient to establish Cordrey's clear right to *mandamus*.

¶ 20    The Unified Code of Corrections (Code) gives authority to both the Prisoner Review Board and the Department of Corrections with regard to parole and MSR.[4] The Prisoner Review Board is independent of the Department of Corrections. 730 ILCS 5/3-3-1(a) (West 2012). The Prisoner Review Board is "the authority for setting conditions for parole, mandatory supervised release under Section 5-8-1(a) of this [Unified] Code [of Corrections], and determining whether a violation of those conditions warrant revocation of parole or mandatory supervised release or the imposition of other sanctions." 730 ILCS 5/3-3-1(a)(5) (West 2012).

¶ 21    The Prisoner Review Board has wide discretion in setting the conditions of MSR. "The conditions of parole or mandatory supervised release shall be such as the Prisoner Review Board deems necessary to assist the subject in leading a law-abiding life." 730 ILCS 5/3-3-7(a) (West 2012). Although the Prisoner Review Board has wide discretion, the legislature has mandated that certain sex offenders are required to wear an approved electronic monitoring device. 730 ILCS 5/3-3-7(a)(7.7) (West 2012).

¶ 22    While the Prisoner Review Board is the authority for setting conditions for MSR and determining whether a violation of those conditions warrants revocation of MSR, the Department of Corrections retains custody of all persons placed on parole or MSR. See 730 ILCS 5/3-14-2(a) (West 2012). The Department of Corrections "shall supervise such persons during their parole or release period in accord with the conditions set by the Prisoner Review Board. *** Such conditions may include that the person use an approved electronic monitoring device ***." 730 ILCS 5/3-14-2(a) (West 2012). Included within the Department's custody are "all sex offenders placed on mandatory supervised release." 730 ILCS 5/3-14-2.5(a) (West 2012). The legislature has directed that the Department of Corrections "shall assign personnel to assist persons eligible for parole in preparing a parole plan. Such Department personnel shall make a report of their efforts and findings to the Prisoner Review Board prior to its consideration of the case of such eligible person." 730 ILCS 5/3-14-2(b) (West 2012).

¶ 23    A parolee or releasee's supervising officer "shall report violations to the Prisoner Review Board and shall have the full power of peace officers in the arrest and retaking of any parolees or releasees or the officer may request the Department to issue a warrant for the arrest of any parolee or releasee who has allegedly violated his parole or release conditions." 730 ILCS 5/3-14-2(c) (West 2012). The Code provides that, "[t]o assist parolees or releasees, the Department shall provide employment counseling and job placement services, and *may* in addition to other services provide the following: (1) assistance in residential placement." (Emphasis added.) 730 ILCS 5/3-14-3(1) (West 2012).

¶ 24    It appears from the statute, then, that while respondent Prisoner Review Board sets the conditions for an inmate's MSR, the entity directed with assisting an inmate with finding a suitable host site for MSR placement is the Department of Corrections, and not respondents. Further, the Department of Corrections is directed to *assist* inmates on MSR in finding residential placement, but is not directed to *obtain* residential placement for those inmates. In this case, the Department of Corrections did attempt to place Cordrey "at (all) places with family and/or friends in the community and no suitable host site was found" to supervise

---

[4]What was referred to as "parole" prior to February 1, 1978, is now termed "mandatory supervised release." See 730 ILCS 5/5-8-1(d) (West 2012); *People v. Absher*, 242 Ill. 2d 77, 82 n.2 (2011).

Cordrey on his electronic monitoring. The Department of Corrections also attempted to place Cordrey "at (all) places that the Illinois Department of Corrections would pay for and the paid placements for any number of reasons could not accept the offender." In response to Cordrey's grievance, the Department of Corrections' Field Services unit responded that every effort was being made to find a place for Cordrey, but due to Cordrey's sex offender status, it had not been able to find suitable placement.

¶ 25 Based upon the preceding statutes, we cannot say that Cordrey has established a clear right to demand that respondents release him to serve his MSR at a suitable host location outside of prison, when no suitable location has been found. Cordrey has failed to establish that respondents have the authority, let alone a duty, to order Cordrey's release to serve his MSR when no suitable host location has been found. Respondents are tasked with setting the conditions of MSR and determining whether a violation of those conditions warrant revocation of MSR. There is no claim or allegation that respondents failed to do those tasks. Consequently, Cordrey has not established that he is entitled to a writ of *mandamus*.

¶ 26 Although Cordrey's complaint for *mandamus* does not allege the elements of a claim for *mandamus*, it is possible that Cordrey is attempting to argue that his claim presents a novel issue that is of crucial importance to the administration of justice. When all the normal requirements for the award of a writ of *mandamus* have not been met initially, this court may consider a petition for writ of *mandamus* if the writ presents a novel issue that is of crucial importance to the administration of justice. *Snyder*, 208 Ill. 2d at 465. As noted, Cordrey characterizes his petition as presenting a question of public importance: whether denying MSR to inmates based upon indigency is constitutional.

¶ 27 Cordrey argues that *mandamus* is appropriate here because this is a purely legal issue, Cordrey's case is not unique to him, and the public importance of the question at issue is unmistakable. Cordrey states that the central issue in this case is whether the statewide practice of "violating at the door" is constitutional. Cordrey argues that granting liberty to one and denying it to another based on the size of a bank account offends the fundamental guarantees of due process and equal protection.

¶ 28 In support of his constitutional claim, Cordrey notes that the Supreme Court, in *Morrissey v. Brewer*, 408 U.S. 471 (1972), recognized that parole, although a conditional liberty, is still a liberty interest protected by the fourteenth amendment to the United States Constitution. Thereafter, in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Court extended the due process guarantees found in *Morrissey* to revoking probation. Cordrey contends that because the due process protections of the Illinois Constitution parallel those of the United States Constitution, the provisions of the Illinois Constitution should be given the same effect when dealing with issues surrounding the revocation of parole for indigent prisoners.

¶ 29 Cordrey further observes that the Supreme Court has repeatedly struck down practices that deprive a person of liberty because of indigency. Thus, in *Griffin v. Illinois*, 351 U.S. 12 (1956), the Court found that an Illinois rule permitting a criminal appeal only if a defendant could pay for a trial transcript violated due process and equal protection. Likewise, in *Williams v. Illinois*, 399 U.S. 235 (1970), the Court overturned an Illinois law that permitted extended prison sentences, beyond the statutory maximum, for those prisoners who could not pay a fine.

¶ 30    With regard to his claim of a due process violation, Cordrey does not point to a particular statute as violating due process. Rather, Cordrey appears to adopt the analysis set forth in *Bearden v. Georgia*, 461 U.S. 660 (1983). In *Bearden*, the Court stated that due process and equal protection principles converge in the Court's analysis of cases involving the treatment of indigents in the criminal justice system. *Id*. at 665. *Bearden* noted that the Court generally analyzed "the fairness of relations between the criminal defendant and the State under the Due Process Clause, while we approach the question whether the State has invidiously denied one class of defendants a substantial benefit available to another class of defendants under the Equal Protection Clause." *Id*.

¶ 31    In *Bearden*, the issue was whether a sentencing court could revoke a defendant's probation for failure to pay the court-imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure to pay the fine and restitution, or that alternative forms of punishment were inadequate. *Id*. The Court found there was no doubt that the petitioner was treated differently from a person who did not fail to pay the imposed fine and thus did not violate probation. The Court explained:

> "To determine whether this differential treatment violates the Equal Protection Clause, one must determine whether, and under what circumstances, a defendant's indigent status may be considered in the decision whether to revoke probation. This is substantially similar to asking directly the due process question of whether and when it is fundamentally unfair or arbitrary for the State to revoke probation when an indigent is unable to pay the fine. Whether analyzed in terms of equal protection or due process, the issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose ... .' *Williams* v. *Illinois*, [399 U.S. 235, 260 1970] (Harlan, J., concurring)." *Id*. at 665-67.

The Court further explained that "[t]he more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process." *Id*. at 666 n.8.

¶ 32    *Bearden* clarified that it was not holding that the State could not place the petitioner in prison. However, based on the record before it, there was no evidence to justify a finding that the petitioner had not made a *bona fide* effort to find work. The Court stated that upon remand, if the court determined that petitioner did not make sufficient *bona fide* efforts to pay his fine, or if the court determined that alternate punishment was not adequate to meet the State's interests in punishment and deterrence, imprisonment would be a permissible sentence. *Id*. at 674.

¶ 33    Cordrey argues that not only is it unconstitutional to imprison someone because he is too poor to pay a fine, as in *Bearden*, it is also unconstitutional to imprison him because he is too poor to afford a place to live. Cordrey maintains that this case is grounded on the substantive due process principles established in *Bearden*: that parole involves a liberty interest that cannot be denied because of poverty. Cordrey asserts that no more facts need to be developed in order for this court to find that a practice that allows a more affluent inmate to leave

prison, but sends the indigent inmate back to his cell, violates fundamental constitutional rights.

¶ 34    Even if we were to assume Cordrey's claim presents a novel issue of crucial importance to the administration of justice, Cordrey's petition nonetheless fails to state a claim for *mandamus*. Contrary to Cordrey's assertion, we find factual questions predominate in this case. Although Cordrey makes the blanket statement that affluent inmates are released on MSR, while indigent inmates are denied MSR, there is no evidence in the record supporting or refuting that conclusion. In fact, counsel for Cordrey conceded at oral argument that some nonindigent offenders are denied MSR for lack of suitable housing, and some indigent offenders are able to find suitable housing and are released on MSR. Further, while Cordrey broadly concludes that he has been denied MSR solely because he is indigent, Cordrey fails to point to any evidence in the record supporting that conclusion.

¶ 35    As *Bearden* recognized, an inquiry into whether differential treatment of offenders, whether analyzed in terms of due process or equal protection, requires inquiry into factors as " 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating that purpose ... .' [Citation.]" *Id*. at 666-67. Here, there is no evidence in the record concerning the nature of the individual interest affected, the extent to which that interest is affected, the rationality of the connection between legislative means and purpose, and the existence of alternative means for effectuating that purpose.

¶ 36    There is no evidence in this case concerning the State's interest in imposing certain conditions on the release of inmates on MSR versus the individual interests of those inmates. There is no evidence concerning the legislative purpose of requiring approved site locations for inmates, particularly sex offender inmates, released on MSR. The record is devoid of any evidence concerning the process and procedure of releasing an inmate on MSR.

¶ 37    Moreover, although Cordrey claims he was denied MSR based upon indigency, it appears from the Field Services unit's response to Cordrey's grievance that the Department of Corrections was unable to find placement for Cordrey due to his status as a sex offender, rather than his status as an indigent. There is no evidence concerning the housing options available to inmates, including sex offender inmates, on MSR. There is no evidence concerning funding for placement of inmates, including sex offender inmates, on MSR. There is no evidence concerning whether both sex offender and non-sex offender indigent inmates are violated at the door, or whether indigent non-sex offender inmates are released on MSR. There is no evidence whether there were alternate measures adequate to meet the State's interests when there is no housing or funding for housing available to inmates on MSR. Absent such evidence, we cannot say as a matter of law that Cordrey was denied MSR based solely on his status as an indigent, or that Cordrey was denied his constitutional rights to due process and equal protection when he was not released on MSR.

¶ 38    We note that even in *Bearden*, the Court did not hold that the defendant's constitutional rights were violated when he was imprisoned for failure to pay his fine. Rather, the *Bearden* Court remanded the case to the state court for a determination of whether the petitioner made a *bona fide* effort to pay his fine, or whether alternate punishment was not adequate to meet the State's interests in punishment and deterrence. *Id*. at 674.

While we are not insensitive to the plight of inmates that are violated at the door, or the fact that "violating at the door" appears to be an ongoing practice in our penal system, Cordrey simply has not established a clear right to *mandamus* in this case. It may turn out that the factors inherent in the statutory scheme that give rise to violations at the door are a matter for the legislature to address, rather than this court. Regardless, this case is not the appropriate case to address the issue, as Cordrey has failed to establish a clear right to *mandamus*.

For the foregoing reasons, we find that *mandamus* is inappropriate and this court will not assume jurisdiction. Cordrey's petition for writ of *mandamus* is therefore denied.

Writ denied.