2021 IL App (1st) 192271

FIFTH DIVISION
MAY 28, 2021

No. 1-19-2271

| | | |
|---|---|---|
| MELISSA KAY, on Behalf of Herself and a Class of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18 CH 2119 |
| MICHAEL W. FRERICHS, in His Official Capacity as Illinois State Treasurer, | ) ) ) | Honorable Pamela McLean Meyerson, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Hoffman concurred in the judgment and opinion.

## OPINION

¶ 1 The plaintiff-appellant, Melissa Kay, filed a putative class action complaint in the circuit court of Cook County against Michael Frerichs, in his official capacity as Treasurer of the State of Illinois, alleging that he was administering the Illinois College Savings Pool in an illegal manner. The circuit court granted the Treasurer's motion for summary determination and held that sovereign immunity barred Ms. Kay from seeking any recovery against the Treasurer other than prospective injunctive relief. The circuit court also denied Ms. Kay leave to amend her complaint. Ms. Kay now appeals those rulings. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                              BACKGROUND

¶ 3 We begin with a brief summary of legislative history relevant to this matter. In 1996,

Congress authorized the states to establish "qualified tuition plans," commonly known as 529 plans, that allow individuals to make contributions to tax-free investment accounts in order to pay for higher education. See 26 U.S.C. § 529 (2018). In 2000, the Illinois General Assembly passed section 16.5 of the State Treasurer Act (Act) Pub. Act 91-607, § 5 (eff. Jan. 1, 2000) (adding 15 ILCS 505/16.5). Under section 16.5(b) of the Act, the Treasurer has the authority to establish and administer college savings programs, in which he "may receive, hold, and invest moneys paid into the Pool and perform such other actions as are necessary to ensure that the Pool operates as a qualified tuition program." 15 ILCS 505/16.5(b) (West 2018).

¶ 4    Pursuant to that statutory authority, the Treasurer's office established two college savings programs, which comprise the College Savings Pool (Pool): Bright Start and Bright Directions. Bright Start is sold directly to, and managed by, participants; Bright Directions is sold to, and managed by, investment advisors. Both Bright Start and Bright Directions are trusts with the Treasurer serving as trustee, as the trust deeds name Illinois's currently elected treasurer as the trustee.

¶ 5    On February 16, 2018, Ms. Kay filed a putative class action complaint against the Treasurer, explaining that she has been a participant in the Bright Start plan since 2013.[1] The complaint alleged that the Treasurer improperly managed the Pool. The complaint contained five counts: alleging breach of fiduciary duty (count I); alleging a constructive trust (count II); seeking an accounting (count III); alleging unjust enrichment (count IV); and a *mandamus* action (count V). Specifically, the complaint alleged that the Treasurer illegally charged fees against the Pool's assets rather than its earnings, illegally retained excess administrative fees that should have been

---

[1]The complaint further explained that "[d]ue to recent changes in the *** Pool, [Ms.] Kay is currently a participant [in the Pool] through the Bright Directions plan."

returned to the participants, and illegally charged all administrative fees against fewer than all investment funds, allowing some funds to incur no fees while others incur more than their share. Ms. Kay averred that, therefore, the Treasurer had violated section 16.5 of the Act and financially harmed the participants of the Bright Start and Bright Direction programs. For relief, Ms. Kay sought:

"A. An order requiring an accounting of the income and expenses related to the State Administrative Fee and Program Management Fee;

B. An order requiring the Treasurer to return to the participants, based on their respective contributions, the State Administrative Fees and Program Management Fees collected in excess of actual expenses;

C. An award of damages incurred as a result of the Treasurer illegally withholding excess State Administrative Fees and Program Management Fees, including any earnings that should have accrued on those excess amounts;

D. An order requiring the Treasurer to account for penalties collected;

E. An order requiring the Treasurer to return to the participants, based on their respective payments of the State Administrative Fees, penalties collected in excess of actual expenses as required by the Act;

F. An injunction requiring the Treasurer to include the amount collected as penalties as income for determining the excess State Administrative Fees collected as required by the Act;

G. An injunction requiring the Treasurer to return penalties collected to the participants as required by the Act;

H. An injunction requiring the Treasurer to take Program Management and

State Administrative Fees from earnings only as required by the Act, the regulations, and the Declarations of Trust;

I. An injunction requiring the Treasurer to assess [the] State Administrative Fee on all accounts and investment types as required by the Act;

J. An injunction requiring the Treasurer to not assess the State Administrative Fee or Program Management Fee in any month where earnings would not cover those fees as required by the Act; and

K. All other relief, including attorney's fees and costs, to which Plaintiff and the Class may be entitled."

¶ 6 On July 6, 2018, the Treasurer filed a motion for summary determination of a major issue. His motion asked the trial court to rule that sovereign immunity limited Ms. Kay's recovery to only prospective injunctive relief. He accordingly requested the trial court to strike paragraphs A-G and K of the complaint's request for relief.

¶ 7 In response, Ms. Kay argued that sovereign immunity was inapplicable to this case because she was not seeking damages from state funds. She also filed a cross-motion for summary determination of a major issue, asking the trial court to find that the Treasurer violated section 16.5 of the Act.

¶ 8 On October 25, 2018, Ms. Kay filed a motion for leave to amend her complaint. Her motion explained that her proposed amended complaint would name the Treasurer in "both his official and individual capacities," which was "relevant to the sovereign immunity issue." The trial court denied her motion, noting that the Treasurer's duty at issue in the case is a duty that he owes "only because of his [S]tate employment." The trial court further stated: "It's unlike a duty to drive carefully or to practice medicine without negligence or to practice law without the negligence. So

my holding is that the source of duty is [the Treasurer's] state employment and the proposed amendment would not cure the defect."

¶ 9    The trial court then ordered the parties to brief the issues in their motions for summary determination. On June 24, 2019, just days before oral argument was scheduled, the Illinois Governor signed into law some amendments to section 16.5 of the Act established by the Illinois General Assembly (the 2019 amendments). The 2019 amendments revised section 16.5 of the Act to clarify, *inter alia*, that the Treasurer "may collect fees" (Pub. Act 101-26, § 5 (eff. June 21, 2019) (amending 15 ILCS 505/16.5(c))), and added a clause stating that "[a]dministrative fees, costs, and expenses, including investment fees and expenses, shall be paid from the assets of the *** Pool" (*id.* (amending 15 ILCS 505/16.5(e))). The amendment also deleted language stating that the Treasurer's regulations shall provide for the administration expenses to be paid from the Pool's earnings and for the excess to be credited to participants' accounts monthly. See *id.* (amending 15 ILCS 505/16.5(n)). The trial court ordered the parties to submit supplemental briefing on the impact of the 2019 amendments.

¶ 10    On October 7, 2019, following a hearing on the issues, the trial court entered an order granting the Treasurer's motion for summary determination, holding that sovereign immunity barred Ms. Kay from seeking any recovery other than prospective injunctive relief. In its written order granting the motion, the trial court cited *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2013 IL App (1st) 120549WC, and noted that the dispositive question is whether a judgment rendered in the case could operate to control the actions of the State or subject it to liability. The trial court explained that it was therefore required to analyze the nature of Trust 668, a "non-appropriated special trust fund" in which the Treasurer deposits administrative fees collected from the Pool; Trust 668 pays for the Pool's operation expenses and also serves as a

reserve fund. The trial court rejected Ms. Kay's argument that the funds in Trust 668 are not state funds because they include fees from the Pool's participants' accounts that have never been part of the state's general revenue fund. The trial court stated:

> "The Court finds that the funds in Trust 668 are, in fact, state funds. Trust 668 was not set up for the purpose of paying claims such as those brought in this case. Moreover, a judgment rendered in this case could operate to control the actions of the [S]tate. The Act does not require the Treasurer to set up an account such as Trust 668. In his discretion, the Treasurer set up Trust 668 to receive the administrative fees the Treasurer charged and collected from the Pool. The Act requires the Treasurer to 'use his or her best efforts to keep these fees as low as possible and consistent with administration of high quality competitive college savings programs.' 15 ILCS 505/16.5(e). This gives the Treasurer broad discretion to decide what expenses to pay, when, and how, in order to meet the goals expressed in the Act.

> * * *

> A large out-of-the-ordinary withdrawal from Trust 668, such as a judgment in this case, would impact the Pool's financial strategy and could send it scrambling to cover other expenses. Plainly, this could operate to control the actions of the State, as it interferes with the State's discretion to decide the appropriate level of reserves in accord with fiscally responsible practices."

¶ 11 Further, the trial court held that *mandamus* was not available in this case, contrary to Ms. Kay's assertion, because "the Treasurer's alleged infractions in this case do not involve violation of a clear duty to perform a non-discretionary act."

¶ 12    In the same order, the trial court also denied Ms. Kay's cross-motion for summary determination, which sought a determination that the Treasurer violated section 16.5 of the Act. In denying her motion, the trial court stated:

> "Given the [c]ourt's ruling on the Treasurer's motion, the issue on [Ms. Kay]'s cross-motion is significantly narrowed. Because of sovereign immunity, [Ms. Kay] cannot recover damages for any past violations. She can only seek an order enjoining the Treasurer from future violations.
>
> Under these circumstances, the parties' briefs with respect to the [2019] amendments to the Act are largely moot. Most of their arguments focused on whether or not the [2019] amendments to the Act should apply retroactively. [Ms. Kay] concedes that requests to enjoin the Treasurer from taking actions in the future are 'obviously' governed by the Act *as amended*. * * * [Ms. Kay] does not contend that the Treasurer's alleged practices violate the Act as it now stands. Therefore, [Ms. Kay]'s cross-motion is denied."

¶ 13    On November 6, 2019, upon the Treasurer's oral motion for a final judgment, the trial court entered a final judgment dismissing the complaint entirely since Ms. Kay conceded that her remaining claims were moot under the amended Act. The trial court accordingly dismissed the case with prejudice, "disposing of all matters." This appeal followed.

¶ 14                                    ANALYSIS

¶ 15    We note that we have jurisdiction to consider this matter, as Ms. Kay filed a timely notice of appeal. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).[2]

¶ 16    Ms. Kay presents the following issues on appeal: (1) whether the trial court erred in granting the Treasurer's motion for summary determination and ruling that sovereign immunity barred Ms. Kay from any recovery other than prospective injunctive relief and that *mandamus* is inapplicable; and (2) whether the trial court erred in denying Ms. Kay leave to amend her complaint. Both parties also ask us to decide whether the 2019 amendments to the Act apply retroactively, an issue that was briefed before the trial court but not ruled upon.[3]

¶ 17    Ms. Kay first argues that the trial court erred when it granted the Treasurer's motion for summary determination and held that sovereign immunity barred relief other than prospective injunctive relief. She claims that sovereign immunity cannot apply here because the funds in Trust 668 are not state funds. Rather, she asserts that the funds in Trust 668 are "private money illegally taken from participants and held in a segregated account" from the general revenue fund, so any judgment satisfied in this case would not involve "a single dollar of state funds." She also argues that, regardless of sovereign immunity, she had a valid *mandamus* action to compel the Treasurer to return fees to participants. She asks us to reverse the trial court's order granting the Treasurer's motion for summary determination.

---

[2]Ms. Kay filed an original notice of appeal following the trial court's order on October 7, 2019, granting the Treasurer's motion for summary determination and denying her cross-motion. The notice of appeal also challenged the October 25, 2018, order, which denied Ms. Kay's motion for leave to amend her complaint. Following the trial court's final judgment on November 7, 2019, dismissing the entire case, Ms. Kay filed an amended notice of appeal to encompass the November 7, 2019, judgment.

[3]Ms. Kay does not challenge the trial court's order denying her cross-motion for summary determination nor the trial court's final judgment on November 7, 2019, dismissing the case entirely.

¶ 18     Section 2-1005(d) of the Code of Civil Procedure (Code) allows a party to seek a summary determination of " 'one or more, but less than all, of the major issues in the case, [if] the court finds that there is no genuine issue of material fact as to that issue or those issues.' " *Fifth Third Bank, N.A. v. Rosen*, 2011 IL App (1st) 093533, ¶ 21 (quoting 735 ILCS 5/2-1005(d) (West 2008)). We review a summary determination ruling *de novo*. *Id.*

¶ 19     The Treasurer's motion for summary determination was based on sovereign immunity. The doctrine of sovereign immunity precludes a citizen from suing the State or its departments without the State's consent. *Jackson v. Alverez*, 358 Ill. App. 3d 555, 559 (2005). The doctrine protects the State from interference in its performance of the functions of government and preserves its control over state coffers. *Illinois Collaboration on Youth v. Dimas*, 2017 IL App (1st) 162471, ¶ 30. When the Illinois Constitution was amended in 1970, it abolished the application of sovereign immunity as it was then configured, "[e]xcept as the General Assembly may provide by law." (Internal quotation marks omitted.) *Id.* ¶ 28; Ill. Const. 1970, art. XIII, § 4. In response, the General Assembly enacted the State Lawsuit Immunity Act (745 ILCS 5/0.01 to 1.5 (West 2018)). Consequently, the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2018)) creates a forum for all claims against the State of Illinois, with some limited exceptions. 705 ILCS 505/8(a) (West 2018); *Parmar v. Madigan*, 2018 IL 122265, ¶ 20.

¶ 20     In this case, Ms. Kay filed her complaint against the Treasurer in his official capacity. A lawsuit against a state official in his or her official capacity is a suit against the official's office, which is no different than a lawsuit against the State. *Parmar*, 2018 IL 122265, ¶ 21. However, it is well established that "the determination of whether an action is one against the State depends upon the issues involved and the relief sought and not simply the formal identification of the parties." *Id.* ¶ 22. For example, where a plaintiff alleges that a state officer's conduct violates

statutory or constitutional law or is in excess of his or her authority, such conduct strips the officer of his or her official status, and so the principles of sovereign immunity would not be offended. *Id.*

¶ 21     Although Ms. Kay claims that the Treasurer acted outside of his authority, her allegations concern the Treasurer's administration of the Pool's finances, which is within his statutory duty and to be performed pursuant to his official capacity. See *Brandon v. Bonell*, 368 Ill. App. 3d 492, 506-07 (2006) (an action resulting from a state employee's breach of a duty imposed solely by a statute pertaining only to state employees is protected by sovereign immunity). Indeed, the Treasurer is the only person with the authority to administer the funds at issue. These are the precise circumstances for which the sovereign immunity doctrine is designed.

¶ 22     Moreover, the monetary relief sought by Ms. Kay further establishes that sovereign immunity applies to this case. As the trial court noted, any damages awarded in this matter would be taken from Trust 668, which would control how the Treasurer manages the remaining funds and, in turn, control the actions of the State. See *Currie v. Lao*, 148 Ill. 2d 151, 158 (1992) (sovereign immunity applies in an action brought nominally against a state employee in his individual capacity where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability). And since Ms. Kay now concedes that the 2019 legislative amendments regarding the Pool make any prospective injunctive relief moot, there is no possible relief.

¶ 23     Ms. Kay nonetheless argues that a *mandamus* action provides her a path for relief around sovereign immunity and that the trial court could and should have used a *mandamus* action to compel the Treasurer to return "illegally collected" fees to participants. However, a *mandamus* action is an extraordinary remedy and is improper if it substitutes the court's discretion or judgment

for that of the official. *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 18. As the trial court noted, since the Pool is managed within the Treasurer's discretion, imposing a *mandamus* order would not be appropriate. Not to mention, the issuance of a *mandamus* order is only available when there is *no other adequate remedy*. *Id.* Here, Ms. Kay could pursue her claim in the Court of Claims. Indeed, it should be noted that she *should have* brought her claim in the Court of Claims in the first place. See 705 ILCS 505/8(a) (West 2018) (the Illinois Court of Claims "shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the State").

¶ 24    In sum, no genuine issue of material fact exists as to whether Ms. Kay is barred from seeking monetary damages by the doctrine of sovereign immunity. Accordingly, the trial court properly granted summary determination on that issue.

¶ 25    Next, Ms. Kay argues that the trial court erred when it denied her leave to amend her complaint. She claims that she should have been allowed to file her proposed amended complaint, which named the Treasurer in his individual capacity. Specifically, Ms. Kay argues that her amended complaint clarified that the Treasurer is the trustee of Trust 668 and breached his fiduciary duties, rendering sovereign immunity inapplicable, and so the trial court should have granted her leave to file an amended complaint naming the Treasurer in his individual capacity.

¶ 26    Section 2-616(a) of the Code provides that amendments to complaints may be allowed at any time before judgment, on just and reasonable terms. 735 ILCS 5/2-616(a) (West 2018). The decision to allow an amendment to a pleading rests within the sound discretion of the trial court, and absent an abuse of discretion, we will not disturb the trial court's decision. *Mandel v. Hernandez*, 404 Ill. App. 3d 701, 705 (2010). A trial court abuses its discretion when no reasonable person would take the view adopted by the trial court. *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 93. In order to determine whether the trial court abused its discretion in denying a

party leave to file an amended pleading, "we consider the following factors: '(1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the moving party had previous opportunities to amend.' " *CIMCO Communications, Inc. v. National Fire Insurance Co. of Hartford*, 407 Ill. App. 3d 32, 38 (2011) (quoting *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 432 (1999)).

¶ 27    As it is the only one in dispute, we confine our analysis to the first factor, which is whether the proposed amended complaint would cure the defective pleading. Regardless of how Ms. Kay frames her claims against the Treasurer, they all directly relate to his management of the Pool, which arises from his position in his official capacity as Illinois State Treasurer and is therefore within the scope of his official duties. Accordingly, her allegations that the Treasurer mismanaged the Pool's funds are clearly allegations that relate directly to his responsibilities as Treasurer and have nothing to do with his individual capacity. See *Alencastro v. Sheahan*, 297 Ill. App. 3d 478, 485 (1998) (a plaintiff may bring a lawsuit against the officer in his or her individual capacity only if the alleged acts are illegal, unconstitutional, or outside the officer's authority). There is no conceivable way in which Ms. Kay could allege that the Treasurer's actions as described in her complaint relate to his individual capacity. Consequently, Ms. Kay's proposed amended complaint would not have cured her original defective pleading, such that sovereign immunity would no longer apply. Therefore, under those circumstances, it cannot be said that the trial court abused its discretion in denying Ms. Kay leave to file her amended complaint. See *Butler v. BRG Sports, LLC*, 2019 IL App (1st) 180362, ¶ 72 (because the amendment that plaintiffs envision would not have cured the fatal flaw in the plaintiffs' pleadings, the trial court did not abuse its discretion

when it denied plaintiffs the opportunity to amend). Thus, we affirm the trial court's order denying Ms. Kay leave to file an amended complaint.

¶ 28 Finally, both parties ask us to decide whether the 2019 amendments to section 16.5 of the Act apply retroactively. This issue was briefed before the trial court but not ruled upon, as the trial court found the issue to be moot based on its sovereign immunity ruling. It is well established that reviewing courts will not decide moot or abstract questions and will not review cases merely to establish precedent. *Greater Pleasant Valley Church in Christ v. Pappas*, 2012 IL App (1st) 111853, ¶ 43; *GlidePath Development LLC v. Illinois Commerce Comm'n*, 2019 IL App (1st) 180893, ¶ 27.

¶ 29                                          CONCLUSION

¶ 30 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 31 Affirmed.

## No. 1-19-2271

| | |
|---|---|
| **Cite as:** | *Kay v. Frerichs*, 2021 IL App (1st) 192271 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-2119; the Hon. Pamela McLean Meyerson, Judge, presiding. |
| **Attorneys for Appellant:** | Matthew Hurst and Matthew Heffner, of Heffner Hurst, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carson R. Griffis, Assistant Attorney General, of counsel), for appellee. |